COMMONWEALTH vs. EDWARD M. WHITE, JR.

No. 89-P-508.

Middlesex. February 15, 1990. - March 23, 1990.

Present: BROWN, PERRETTA, & FINE, JJ.

Further appellate review granted, 407 Mass. 1102 (1990)

*Rape. Constitutional Law*, Assistance of counsel. *Practice, Criminal*, Assistance of counsel.

A defendant charged with rape was denied effective assistance of counsel where his trial counsel's failure to call two witnesses to impeach the complainant's testimony was unsupported by a reasonably sound strategy, and where the defendant was prejudiced, inasmuch as the case against him was based essentially upon the credibility of the complainant. [420-425]

INDICTMENT found and returned in the Superior Court Department on October 28, 1987.

The case was tried before *Paul A. Chernoff*, J., and a motion for a new trial was heard by him.

*Joseph J. Balliro* for the defendant.

*Rosemary D. Mellor*, Assistant District Attorney (*Adrienne C. Lynch*, Assistant District Attorney, with her) for the Commonwealth.

FINE, J. The defendant was convicted of rape. The complainant was a Motorola sales representative. The defendant was the sales manager under whose supervision the complainant worked. After a sales meeting, a group of Motorola coworkers, including the complainant and the defendant, gathered for further discussions and drinks in the cocktail lounge of the Marriott Hotel in Newton. The complainant and the defendant, the last two of the group to leave, walked out together sometime after midnight, engaged in conversation, and headed towards their respective cars in the parking lot. From that point, their stories diverge. The complainant claims that the defendant forced her into the back seat of his

car, which had been unlocked, and raped her. The defendant claims that his amorous advances were reciprocated, and that they entered the back seat of his car, which had been locked, and had consensual sexual intercourse.

The defendant appeals both from his conviction, based upon a claim of an erroneous jury instruction, and from the denial of his motion for a new trial, based upon a claim that at trial he was denied effective assistance of counsel. We discuss only the latter claim because we agree that the representation received by the defendant was constitutionally deficient.

We first briefly describe so much of the trial as is relevant to the claim of ineffective assistance of counsel. The complainant related her version of the events of the evening, culminating in the rape in the back seat of the car. She told the jury that, afterwards, she went home and tried to reach her husband, who was in California on business. She finally reached him later that morning, and told him what happened.[1] Later the same day she spoke to two Motorola officials, Collette Wiggins, a personnel manager, and James Kelly, a vice president. During the late afternoon of the same day, she reached a friend, Patricia Noguera, and reported that she had been raped. The complainant also testified that she had bruises on her leg as a result of the incident. She was cross-examined at length about, among other things, her failure to cry out or seek help, the cramped space in the rear seat of the car, and the difficulty the defendant would have had forcing her into the car. Defense counsel also brought out the fact that the complainant's panty-hose and other clothing had not been torn and the absence of any physical evidence of rape, apart from the bruises. Noguera and police officer Janice Brack testified as fresh complaint witnesses after objections based upon lack of freshness were overruled. The defendant's case consisted of his testimony as to what occurred on the evening in question and testimony from a number of witnesses who contradicted the complainant's tes-

[1]Neither the complainant nor her husband was permitted to testify as to the content of any private conversations between them. G. L. c. 233, § 20.

timony concerning relatively minor details, for example, how much the complainant had to drink.

The hearing on the motion for a new trial brought out the following additional facts. The prosecutor had provided pretrial discovery to defense counsel revealing as "exculpatory evidence" the fact that the complainant first told her husband, and then Wiggins and Kelly, that the defendant had fondled her and made unwanted advances but that she was able to escape without entering the car when the defendant attempted to unlock the car door. The discovery materials revealed that she first told her husband she had been raped when he returned to Boston at approximately 9:00 P.M. on the day of the incident, and she first told Kelly and Wiggins that she had been raped the following day.

Wiggins testified at the motion hearing that she had received a call from the complainant in the late morning of the day of the incident. The complainant told Wiggins that the defendant had sexually harassed her, grabbing and fondling her in the parking lot, but that she was able to get away before anything further happened. Wiggins first heard the claim of rape on the following day at a meeting she attended with the complainant, the complainant's husband, and Kelly.

Kelly testified to a conversation at approximately 1:00 P.M. of the day of the incident, which was similar to the one the complainant had with Wiggins. Kelly then spoke to the defendant and informed him that the complainant had made an allegation of sexual harassment. The defendant sounded shocked and denied it, saying "no way, no way, no force." Three hours later, the defendant called Kelly on the telephone and acknowledged that he had had sexual intercourse with the complainant, but stated that it was consensual. Wiggins and Kelly testified that they were never interviewed by the defendant's trial counsel.

Finally, the defendant's trial counsel testified. He had been retained privately by the defendant prior to arraignment. He stated that he had known from the discovery materials that Wiggins and Kelly would say, if called to testify, that during their first conversations with the complainant she stated that she had not been raped. Counsel decided, nevertheless, neither to interview them nor to call them as witnesses. He

offered several tactical reasons for not pursuing them. Counsel also admitted that he failed to bring to the trial judge's attention the information about the complainant's statements to her husband, Wiggins, and Kelly when the judge was ruling on the admissibility of the fresh complaint testimony.

The judge denied the motion for a new trial, setting forth his reasons in a careful and detailed memorandum. He concluded that the failure to call Wiggins and Kelly was a tactical decision which was not manifestly unreasonable. He viewed the complainant's initial statements to the witnesses as being of limited impeachment value because they did not corroborate the defendant's version of what had occurred, and he concluded that it was most unlikely, in any event, that their testimony would have affected the outcome of the case. Although he felt it would have been preferable for counsel to have interviewed Wiggins and Kelly, he did not view the failure to do so as a significant breach. He also thought it would have been preferable for counsel to have disclosed to him the complainant's initial statements about the incident at the point during the trial when he was called upon to rule on whether Noguera and officer Brack could give their fresh complaint testimony, but he concluded that, had he had the information, he still would have admitted the testimony.

When the claim is one of ineffective assistance of counsel, we engage in a two-step inquiry. First, we consider whether the conduct of trial counsel fell "measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Second, we determine whether prejudice resulted from any shortcomings of counsel. *Commonwealth* v. *Rondeau*, 378 Mass. 408, 412 (1979). *Commonwealth* v. *Sellon*, 380 Mass. 220, 223, 226 (1980).

In many respects defense counsel conducted a vigorous defense. He brought out inconsistencies and weaknesses through pointed cross-examination of the complainant and the testimony of defense witnesses, and he stressed those weaknesses effectively in closing argument. The defendant's version of the incident was presented to the jury in detail in response to counsel's questioning of him on direct examina-

tion. Nevertheless, we identify and evaluate three asserted shortcomings in defense counsel's performance.

First, counsel failed to apprise the judge of the substance of the complainant's initial conversations with her husband, Wiggins, and Kelly, so that he would have had before him all the facts relevant to the admissibility of the fresh complaint testimony. However, as the judge indicated in his decision that, had he had the information, his decision on admissibility would have been the same, any such shortcoming on the part of counsel would have had no effect on the outcome.[2]

Second, counsel failed to interview Wiggins and Kelly. He had a duty to conduct a reasonable investigation. *Strickland* v. *Washington*, 466 U.S. 668, 691 (1984). See also *Commonwealth* v. *Sellon*, 380 Mass. at 226; *Commonwealth* v. *Haggerty*, 400 Mass. 437, 442 (1987). He must have realized from the discovery materials that what Wiggins and Kelly would have had to say might have been helpful for impeachment purposes. Had counsel interviewed Wiggins and Kelly, he would have learned that the defendant's initial denial of involvement was limited to the allegation of sexual harassment, sexual assault, or the use of force. The denial, thus, was not inconsistent with anything the defendant said at trial. There could hardly have been a tactical reason for not at least interviewing Wiggins and Kelly. See *Crisp* v. *Duckworth*, 743 F.2d 580, 584 (7th Cir. 1984), cert. denied, 469 U.S. 1226 (1985). The failure to interview them could not have been prejudicial, however, unless it was also ineffective for counsel to fail to call either of them as a witness at trial.

Therefore, we turn to counsel's third asserted shortcoming, his failure to call either Wiggins or Kelly to testify about their conversations with the complainant. There were obvious potential benefits to the defendant in calling these witnesses to testify. The complainant's inconsistent statements as to whether a rape occurred and whether the defendant's car door was locked might have affected the jury's assessment of her credibility. Also, in the absence of evidence of the sub-

---

[2]In the circumstances of this case, we would have deferred to the trial judge's discretion had he decided to admit the fresh complaint testimony even in the face of the additional evidence. See *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. 622, 627 (1987).

stance of the initial conversations between the complainant
and Wiggins and Kelly, the jury, who were aware that the
conversations took place, might have assumed, incorrectly,
that in those initial conversations the complainant stated that
she had been raped.[3] We, thus, examine counsel's rationale
for declining to call the witnesses to determine whether his
tactics were "manifestly unreasonable." *Commonwealth* v.
*Rondeau*, 378 Mass. at 413, quoting from *Commonwealth* v.
*Adams*, 374 Mass. 722, 728 (1978).

At the hearing on the motion for a new trial, counsel ar-
ticulated several justifications for not calling the witnesses.
First, he did not want the jury to hear of the defendant's
initial denial to Kelly. However, Kelly's testimony would
have been that the defendant denied only sexual harassment,
sexual assault, or the use of force, and not sexual intercourse.
While counsel was entitled, to a certain extent, to rely upon
what his client had told him concerning the denial, *Strick-
land* v. *Washington*, 466 U.S. at 691, as soon as counsel re-
ceived the discovery materials and became aware that, at the
time of the denial, the complainant had not yet made an alle-
gation of rape, his failure to clarify further the situation with
his client and his failure to interview Kelly were unreasona-
ble. "[S]trategic choices made after less than complete inves-
tigation are reasonable precisely to the extent that reasonable
professional judgments support the limitations on investiga-
tion." *Id.* at 690-691. Given our appraisal of counsel's pre-
trial preparation in this case, we find his first reason for not
calling the witnesses to be unpersuasive.

---

[3]It also seems likely, based on the record, that the jury were left with
the erroneous impression that the complainant told her husband she had
been raped in her first conversations with him after the incident.

Counsel's other reasons for failing to call Kelly and Wiggins to testify also fail to stand up to scrutiny. Counsel stated that he believed that, if he called Kelly and Wiggins to the stand, they would testify: (1) that the defendant had a drinking problem and was involved in a previous, alcohol-related incident at work; and (2) that the defendant had been terminated from his position at Motorola, but the complainant had not. Such testimony was irrelevant to the rape charge. Counsel could have filed a motion in limine for a determination of its admissibility in advance of trial, and it would probably have been excluded. To the extent that counsel's erroneous view of the law can be characterized as a strategic choice (compare *Commonwealth* v. *Haggerty*, 400 Mass. at 441), it was a manifestly unreasonable one. Finally, counsel sought to avoid repetition before the jury of the complainant's allegation of rape, made to Wiggins and Kelly on the day following the rape. That testimony would have added little of substance to the evidence, however, and would have been of only slight significance as corroboration.

As counsel's failure to call Wiggins and Kelly to testify was unsupported by a reasonably sound strategy, his performance fell measurably below that which we would expect from an ordinary fallible lawyer and was constitutionally deficient. Contrast *Commonwealth* v. *Sellon*, 380 Mass. at 220 (decision not to call witness to testify was not unreasonable where: (1) witness's statement would contradict defense theory; and (2) witness's statement would open the door to otherwise inadmissible statements which would be harmful to the defendant); *Commonwealth* v. *Stokes*, 10 Mass. App. Ct. 434 (1980) (not unreasonable to fail to call witnesses whose testimony would place the defendant near the crime scene at the approximate time of the incident and was otherwise cumulative); *Commonwealth* v. *McMaster*, 21 Mass. App. Ct. 722, 735-736 (1986).

We turn to the question whether the defendant was prejudiced by his attorney's conduct. On the one hand, the complainant's prior inconsistent statements did not tend to confirm the defendant's testimony that there was consensual sexual intercourse. Moreover, the jury might have considered that, if the complainant and the defendant had engaged in

consensual sexual intercourse, it is unlikely that the complainant would have made any complaints of sexual assault the next morning to Kelly and Wiggins. Further, if Kelly and Wiggins had been called to testify about the complainant's initial statements, she would have been given the opportunity on the witness stand to explain why she did not at first state that she had been raped. The likely explanation — either that she was too embarrassed, or that she wanted, first, to tell her close friend and to discuss it with her husband in person — might have had a ring of truth to it. There was, therefore, some possibility that testimony from Wiggins and Kelly would not have been helpful to the defendant.

On the other hand, the case against the defendant was based, essentially, upon the credibility of the complainant. Compare *Nealy* v. *Cabana*, 764 F.2d 1173 (5th Cir. 1985); *Blackburn* v. *Foltz*, 828 F.2d 1177 (6th Cir. 1987), cert. denied, 485 U.S. 970 (1988); *United States ex rel. McCall* v. *O'Grady*, 714 F. Supp. 374 (N.D.Ill. 1989). Contrary to the impression created at trial, her initial statements were that she was not raped. Further, her testimony at trial that the car door was unlocked was inconsistent with her initial statements to Wiggins and Kelly that it was locked. The jury might well have regarded it as doubtful, in the circumstances, that the defendant would have been able forcibly to maneuver the complainant into the back seat of the car if it had been locked.

"The effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.' " *United States* v. *Gray*, 878 F.2d 702, 711 (3d Cir. 1989), quoting from *Strickland* v. *Washington*, 466 U.S. at 696. Contrast *Commonwealth* v. *McCarthy*, 12 Mass. App. Ct. 722, 725 (1981). We do not know what the jury would have decided had they been presented with the testimony. We do believe, however, that the defendant has met his burden of demonstrating that there is a good chance, if Wiggins and Kelly had testified, the jury would have had a reasonable doubt as to his guilt.

See *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977).

*Judgment reversed.*

*Verdict set aside.*