COMMONWEALTH *vs.* EDWARD M. WHITE, JR.

Middlesex. September 6, 1990. - January 30, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Rape. Constitutional Law*, Assistance of counsel. *Practice, Criminal*, Assistance of counsel.

A defendant charged with rape was not denied effective assistance of counsel by reason of his trial counsel's decision not to call two witnesses to impeach the complainant's testimony, where this decision was supported by a reasonably sound trial strategy, and where the absence of the testimony of these witnesses did not prejudice the defendant's case. [273-277] LYNCH, J., with whom LIACOS, C.J., joined, dissenting.

A defendant charged with rape was not denied effective assistance of counsel by reason of his trial counsel's failure to inform the judge of the substance of certain conversations the complainant had with her husband and others, when the judge was considering the admissibility of fresh complaint testimony, where the judge, in denying the defendant's motion for a new trial, ruled that even if he had had this information, he would nevertheless have admitted the challenged testimony, and where the judge's conclusion that defense counsel was reasonably competent was supported by the evidence. [277]

INDICTMENT found and returned in the Superior Court Department on October 28, 1987.

The case was tried before *Paul A. Chernoff*, J., and a motion for a new trial was heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Joseph J. Balliro* for the defendant.

*Rosemary D. Mellor*, Assistant District Attorney (*Adrienne C. Lynch*, Assistant District Attorney, with her) for the Commonwealth.

GREANEY, J. After he was convicted by a jury in the Superior Court of rape, the defendant moved for a new trial on

the ground that he had been denied effective assistance of
counsel. After an evidentiary hearing, the Superior Court
judge who presided at trial denied the motion. The Appeals
Court reversed, 28 Mass. App. Ct. 417 (1990), and we
granted the Commonwealth's application for further appel-
late review. We affirm the decision of the Superior Court.

We summarize the evidence at trial. The defendant and
the complainant were employees of the Motorola Corpora-
tion. On August 19, 1987, following an employee meeting, a
group of Motorola employees, including the defendant and
the complainant, went to the cocktail lounge of a local hotel.
Sometime after midnight, the defendant and the complainant
left the lounge and walked together toward their respective
cars in the hotel parking lot. Their stories diverge at this
point. The complainant testified that the defendant forced
her into the back seat of his car and raped her. The defend-
ant testified that the complainant willingly entered his auto-
mobile and engaged in consensual sexual intercourse.

The complainant testified that she finally broke away from
the defendant and drove home. She then called her husband,
who was on business in California.[1] Later that day, she
called a Motorola personnel manager, Collette Wiggins, and
said that she wanted to file a sexual harassment claim
against the defendant. She told Wiggins that the defendant
had forcibly fondled her, but that she had escaped. After this
conversation, James Kelly, a Motorola vice president, called
the complainant. The complainant repeated essentially the
same story that she had related to Wiggins. That afternoon,
the complainant called a friend, Pat Noguera, and reported
that she had been raped.

The following day, the complainant met with both Wiggins
and Kelly and reported that, in fact, she had been raped. The
same day, the complainant also reported to the police that
she had been raped. Noguera and the police officer with

---

[1]Because of the marital disqualification, G. L. c. 233, § 20, neither the
complainant nor her husband was permitted to testify to the content of this
conversation.

whom the complainant spoke testified as fresh complaint witnesses.[2] As to physical evidence, the complainant's panty hose (which had a run in the crotch) were admitted, as were photographs of bruises on the complainant's legs that she testified resulted from the defendant kneeling on her.

The defendant's case included his own testimony that intercourse had been consensual. The defendant also adduced the testimony of six other witnesses (co-workers and a waitress from the hotel lounge) that tended to impeach various aspects of the complainant's testimony. The defendant's wife testified in corroboration of certain aspects of the defendant's testimony. In addition to cross-examining the complainant vigorously about, among other things, her failure to cry for help at the time of the assault and the difficulty that the defendant would have had in forcing the complainant into the car,[3] defense counsel also filed requests for jury instructions that were favorable to his case on the issue of consent.

We next summarize posttrial events. After the jury found the defendant guilty, the defendant (represented by new counsel) moved for a new trial on the ground of ineffective assistance of counsel. A full evidentiary hearing was conducted, and brought out the following additional facts. Wiggins and Kelly testified, as described above, that the complainant initially claimed that she had been indecently touched, but then (on the following day) claimed that she had been raped. Kelly also testified that he twice spoke to the defendant after the complainant's initial report, but before

---

[2] The defendant objected to the admission of this testimony on freshness grounds. The judge overruled these objections, but did so not knowing (because defense counsel did not inform him) that, prior to speaking to either of the two fresh complaint witnesses, the complainant had told her husband, Wiggins, and Kelly that she had been sexually harassed, but had averted rape.

[3] Defense counsel effectively cross-examined the prosecution's other witnesses as well. For example, he elicited from the forensic chemist (who examined the complainant's panty hose) the opinion that the run in the crotch of the panty hose did not indicate tearing or excessive force. Defense counsel also brought out inconsistencies between the police officer's testimony at trial and before the grand jury.

her report of actual rape. He described the conversations in the following exchange set forth below.[4] Both Wiggins and Kelly testified that defendant's trial counsel never interviewed them.

Defendant's trial counsel testified to the following effect. During pretrial preparation of the case, he and the defendant discussed possible trial strategy on several occasions. Defense counsel initially considered producing no evidence, thus sim-

---

[4] Q. "Now, on August 20, 1987, do you recall what time it was that you first spoke to Edward White?
A. "Mid-afternoon.
Q. "And, at that time, did you call him or did he call you?
A. "I called him.
Q. "Now, do you recall, sir, the substance of the conversation that you had with the defendant on that afternoon?
A. "Yes.
Q. "And what was that?
A. "I called him and I don't remember the exact words, but, essentially, reported to him that there was a sexual harassment charge against him by [the complainant].
Q. "And, at that time, sir, did he indicate to you that nothing of a sexual nature had occurred between the two?
A. "No.
Q. "Do you recall what he said during that conversation?
A. "I recall, I'm not certain I have it verbatim, but I've gone over it many times in my mind. His reaction was shock and I remember him saying: No. Oh, no. No way. Then I proceed to describe to him some of the comments that [the complainant] had described to me, hand in blouse, hand up dress and he, I recall him saying: No way. No way. No force.
Q. "Now, at some point after that conversation that you had with the defendant, Ed White, that afternoon, did you speak to him again on the telephone that day?
A. "Yes.
Q. "And how long after the original call was that?
A. "I would guess — I was home, so, it probably was three hours.
Q. "And who made the phone call, sir?
A. "He called me.
Q. "And do you recall the substance of that conversation?
A. "Yes.
Q. "And what was that?
A. "He called and told, wanted to tell me that there was indeed a situation that happened in the parking lot at the Marriott and the situation was one that involved two consenting adults in the back seat of his automobile."

ply requiring the Commonwealth to meet its burden of proving guilt beyond a reasonable doubt. The defendant wanted to testify, however, so counsel discussed this option with him. Defense counsel concluded that the defendant appeared credible and would make a good witness before the jury. From this point, counsel and defendant discussed the two possible approaches to defense of the cases: a denial that intercourse had occurred, or an admission that it had occurred but that it had been consensual.

Before deciding to pursue consent, defense counsel discussed with the defendant the drawbacks of basing the defendant's case on denial. It was defense counsel's opinion that this contention would not succeed because the defendant had admitted to Kelly and Wiggins that he had intercourse with the complainant. Moreover, in the early morning hours after the incident, the defendant was seen at the Motorola offices (where he had gone after the incident so that his wife would not know that he had been with another woman). Defense counsel asked the defendant how his denial of intercourse could be reconciled with his presence at the office at a hour when he ordinarily would not be expected to be there. The defendant was unable to provide a satisfactory explanation.

Eventually, after lengthy discussion, consent was agreed on as the main defense. Evidence then was prepared by defense counsel to support this contention. Several trips were made to the hotel to search for witnesses to corroborate the defendant's testimony. In addition to gathering evidence, defense counsel filed several pretrial motions, including motions for a bill of particulars, for discovery and inspection, for an examination of a motor vehicle, for production of the complainant's clothing, and for a ruling on the admissibility of statements made by the complainant.

Regarding the testimony of Wiggins and Kelly, although defense counsel knew (from speaking with the defendant and through discovery materials provided by the prosecution) that the complainant had changed the story that she originally gave Wiggins and Kelly, he deliberately decided

against calling either of them to testify. Defense counsel did so because he had been told by the defendant that, when he first spoke with Kelly, the defendant "vehemently" denied that he had anything to do with the victim on the night of the incident, but that, during the second conversation with Kelly, he reversed himself and admitted to intercourse. Defense counsel did not want the jury to learn of this contradiction. As to Wiggins (among other things), counsel was concerned about her repeating the victim's report of rape essentially as a third fresh complaint.

Based on this testimony, the trial judge denied the defendant's motion for a new trial. In his detailed order and memorandum (reproduced in pertinent part in the margin), the trial judge reasoned that there had been no significant breach by the defense counsel of his duty, and, even if such a breach could be assumed, no tangible harm to the defendant's case.[5]

---

[5]"Failure to Call [Kelly] and Wiggins — After discussing the matter with his client, [counsel] elected not to call [Kelly] and Wiggins as witnesses at trial although their consistent testimony would have been of some value in impeaching the credibility of the complaining witness. As the defendant's later statements to [Kelly] and his trial testimony place him inside his car having consensual intercourse with [the complainant], her initial statements are of limited impeachment value as they do not corroborate the defendant's version. They would have been of much more significance corroborating a defense that nothing happened. [Counsel] testified that he did not call Mr. [Kelly] because there was the real danger that he would have been asked on cross-examination about the defendant's initial denials to him. . . . As to Wiggins, [counsel] was fearful that she would have disclosed that the defendant has been terminated by Motorola and that the complainant was still an employee, and the jury would have inferred that Motorola believed the complainant and not the defendant. The choice not to call [Kelly] seems to be a reasoned tactical choice by counsel. The decision as to Wiggins is not as clear because counsel could have moved in limine to ascertain whether or not the [information he was concerned about was admissible]. Nevertheless, this failure does not, in and of itself, amount to a significant error and it is most unlikely that it would have made a difference in the outcome of the case. . . .

"The Failure of Counsel to Disclose the Substance of the [Complainant's Initial] Statements to the Court — At trial Defense Counsel objected to the admission as fresh complaint of the statement to Ms. Noguera given the same day and about 16 hours after the events. . . . To assist the Court in making its determination of 'freshness,' it would have been preferable if either or both counsel had focused on the specifics of the disclosures to

The defendant argues here that the judge erred in denying the motion for a new trial because defense counsel had provided ineffective assistance when he: (1) failed to interview Wiggins and Kelly, and to call them as witnesses; and (2) failed to inform the trial judge of the substance of the complainant's original conversations with her husband, with Wiggins, and with Kelly, when the judge was considering the admissibility of the fresh complaint testimony.

For the defendant to prevail on his claim of ineffective assistance of counsel, we must conclude, first, that defense counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer" and, second, that the defendant's case was prejudiced by counsel's conduct such that the conduct "has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977) (requiring showing "that better work might have accomplished something material for the defense"). In cases where tactical or strategic decisions of the defendant's counsel are at issue, we conduct our review with some deference to avoid characterizing as unreasonable a defense that was merely unsuccessful. See *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979). See also *Strickland* v. *Washington*,

Wiggins and [Kelly]. In retrospect, it would have made little difference and the Court still would have admitted [the complainant's] statement to Noguera as fresh complaint. . . .

"Assuming, without deciding, that defense counsel erred by neither interviewing nor calling [Kelly] and Wiggins, the defendant has failed in its burden to show that these decisions had a discernible effect on the outcome of the case. . . . Had [Kelly] testified, the jury would have learned that the defendant had admitted to intercourse, thus counsel would have been hardpressed to create a reasonable doubt as to whether intercourse occurred. . . . Defendant's trial counsel made a tactical decision after weighing the likely benefits and liabilities of two witnesses. If the jury had found a reasonable doubt, counsel would have been credited with a strategy which kept out potentially damaging evidence. A verdict to the contrary naturally calls into question all tactical decisions. The defendant has failed to show that counsel's decisions were unreasonable, deficient, and incompetent to the extent that representation fell below that which might be expected from an ordinary fallible lawyer." (Citations omitted.)

466 U.S. 668, 689-690 (1984). Rather than merely unreasonable, we require that challenged tactical judgments must be "manifestly unreasonable." *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). In applying this standard in this case, we have the benefit of a detailed memorandum from the trial judge. "We [will] accept [his] subsidiary findings as final if warranted by the evidence and we [will] pay substantial deference to his ultimate conclusions." *Commonwealth* v. *Millyan*, 399 Mass. 171, 181 (1987). We consider the defendant's arguments in light of these principles.

1. *The failure to interview and call as witnesses Wiggins and Kelly*. Here, we consider together what actually are two separate alleged shortcomings in defense counsel's performance: the failure to interview Wiggins and Kelly and the failure to elicit the testimony of Wiggins and Kelly at trial. We do so because, as the Appeals Court recognized (see 28 Mass App. Ct at 421), even if it was unreasonable not to interview the two witnesses, the failure to interview them is of no import if it was not also ineffective for counsel to fail to call either of them as a witness at trial.

a. *Conduct of defense counsel*. Counsel decided not to use the testimony of Wiggins at trial for fear that her testimony would essentially represent a reprise of the fresh complaint testimony offered by two other witnesses. Wiggins' testimony unavoidably would have involved repetition of the complainant's report of rape. It was a legitimate goal of defense counsel to reduce the number of witnesses testifying to reports of rape by the complainant; therefore, the tactical decision not to call her to testify was not unreasonable.

Defense counsel decided not to offer Kelly's testimony because he did not want the jury to learn that the defendant had told Kelly what amounted to two different stories. Because the defendant's credibility before the jury was critical to the success of his defense, this also was a reasonable tactical decision. Defense counsel was justifiably concerned that the jury not be exposed to evidence supporting the inference that the defendant had contradicted himself in describing what had happened between him and the complainant.

The defendant argues that, in fact, Kelly's testimony would not have revealed that the defendant had contradicted himself, because the defendant's original denial was only of sexual harassment, and his subsequent admission was only of consensual intercourse. Thus, the defendant contends, if defense counsel had interviewed Kelly, he would have discovered this, and could have benefited from Kelly's testimony without being harmed by the revelation of waffling by the defendant. This argument is unpersuasive. Defense counsel was relying on his client's description of the conversations with Kelly in deciding whether to use Kelly's testimony. The defendant described for counsel two conversations: the first amounting to a denial; the second amounting to an admission. Thus, the defendant in effect told defense counsel that he had contradicted himself in responding to a serious charge. The fact of that contradiction was plausibly suggestive of a guilty conscience, as well as of actual guilt. Common sense dictates that a defendant's description of events underlying a criminal charge should be considered reliable in circumstances like this. To hold otherwise is to require both that defense attorneys assume that their clients cannot or will not assist in their own defenses, and that they investigate and confirm virtually every statement that a client makes, no matter how apparently or circumstantially accurate. Beyond being impractical, such a requirement is contrary to earlier statements on this point. See, e.g., *Strickland* v. *Washington*, *supra* at 691; *United States* v. *Decoster*, 624 F.2d 196, 209-210 (D.C. Cir. 1979) (*S.C.* 598 F.2d 311, cert. denied, 444 U.S. 944 [1979]).

The testimony of both Wiggins and Kelly would have been problematic for the defendant for another important reason. Both witnesses would testify that, although aspects of the complainant's story had changed, she consistently reported that the defendant had forced himself upon her — that is, forcibly fondled her, as in the first report, and forcibly raped her, as in the second report. If believed, the complainant's unwavering allegations of force obviously would have directly rebutted the defendant's consent defense. In considering

whether to use such testimony, defense counsel reasonably could project that a jury might forgive the complainant her hesitancy in claiming rape, but would not forget that she never abandoned her charge that the defendant dealt with her violently. In sum, defense counsel could anticipate that calling the witnesses would expose the general inconsistency in the defendant's position and highlight the general consistency in the complainant's testimony. In these circumstances, we are reluctant to second guess defense counsel's considered judgment as to the value of the testimony. See 2 W.R. LaFave, Criminal Procedure § 11.10 at 47 (1990 Supp.).

(b) *Prejudice.* Even if we were to find that defense counsel's conduct in not interviewing or calling to testify Wiggins and Kelly fell below that to be expected of the ordinary fallible lawyer, we would conclude that there was no resulting prejudice to the defendant's case. Had defense counsel presented the testimony of Wiggins, he would have been able to argue that the complainant had changed her story and that these variations suggested questionable credibility. On the other hand, as noted above, Wiggins would have been an additional witness essentially testifying to a third fresh complaint, and she would also have testified that the complainant never deviated from her report that the defendant had forcibly assaulted her. Had defense counsel presented the testimony of Kelly, he could have benefited from a second witness describing the complainant's varying story. However, again as noted above, the jury would have learned that the defendant himself had given Kelly inconsistent reports about the incident, and that the complainant consistently reported to Kelly that the defendant forcibly assaulted her.[6]

---

[6]It is doubtful that, if Wiggins' and Kelly's names had appeared on the defendant's pretrial witness list, the complainant would not have had an explanation for the shifting of her story. Obviously, a plausible explanation by the complainant as to why she waited to tell Wiggins and Kelly that she had been raped would have greatly reduced the impeachment value of their testimony, without diminishing the capacity of the testimony to damage the defendant's case.

The fact that Kelly's memory of the conversations with the defendant differed somewhat from what defense counsel understood the substance of those conversations to be does not persuade us that the failure to offer the testimony of these witnesses prejudiced the defendant's case. This is so because, fundamentally, the conversations as Kelly remembered them paralleled counsel's understanding of the conversations. A comparison of the two versions of the conversations is in order.

The defendant told counsel that, when Kelly called, the defendant vehemently denied having had anything to do with the complainant on the night in question. Later, however, the defendant called Kelly back and admitted to consensual intercourse. For his part, Kelly testified that the defendant at first was "shock[ed]" by the allegations; the defendant's first response to Kelly was a denial ("No. Oh, no. No way."); and the defendant later called Kelly back and admitted that "indeed" (i.e., as in "contrary to what was said earlier") there had been "a situation . . . that involved two consenting adults. . . ." Thus, Kelly's description of the conversations matched that given by the defendant to counsel on the following essential points: Kelly called the defendant and leveled a charge; the defendant denied the charge; the defendant then called back and made an admission that appropriately should have been made during the first conversation. Therefore, if counsel had called Kelly to testify, the jury would have heard a description of events that basically matched the version given counsel by the defendant and that evidenced on the part of the defendant at best a sense of guilt over his relations with the complainant, and at worst a capacity for untruthfulness.

The testimony of Wiggins and Kelly had a tendency to impeach in part the complainant's description of events. On balance, however, any benefits that the defendant would have realized from this testimony could not have risen to the level of a "substantial ground of defence" because they would have been largely offset by the harm that other aspects of the

testimony would have done to his case. The absence of the testimony therefore was not prejudicial.

2. *The failure to inform the judge of the complainant's initial conversations with her husband, Wiggins, and Kelly when he was evaluating the fresh complaint evidence.* Here, we need not undertake an extended analysis of conduct and prejudice. The judge ruled that, even if defense counsel had brought the substance of the complainant's initial conversations with Wiggins and Kelly to his attention when he was considering the admissibility of the fresh complaint testimony, he nevertheless would have admitted the testimony. Therefore, although it would have been better if counsel had fully informed the judge, even assuming that counsel's failure to do so was manifestly unreasonable, the outcome of the case was in no way affected.

In this case, defense counsel made difficult strategic choices based on discussion with the defendant, and after reasonable consideration of the law and the facts relating to the plausible options. Defense counsel also conducted an investigation, filed numerous pretrial motions, and vigorously represented the defendant through trial. This is not a case where defense counsel took questionable unilateral action, was excessively sloppy, gave away the defense, failed to acquaint the defendant with the main theory of his own case, or otherwise seriously bumbled a critical issue.

The trial judge's conclusion that defense counsel was reasonably competent is supported by the evidence. Unlike this court, the trial judge had the opportunity to observe and evaluate all of the witnesses at trial, as well as defense counsel, Wiggins, and Kelly. We will not disturb his judgment.[7]

*Judgment affirmed.*

---

[7]We see nothing in the jury instruction complained of by the defendant's new counsel that would create a substantial risk of a miscarriage of justice.

LYNCH, J. (dissenting, with whom Liacos, C.J., joins). I cannot agree with this court's ruling that defense counsel's decision not to interview Wiggins and Kelly and not to call them as impeachment witnesses was neither "manifestly unreasonable" nor prejudicial to the defendant's case.[1] In a thorough and tightly reasoned opinion, the Appeals Court held that counsel's decision was not supported by any sound trial strategy and that in fact the defendant had demonstrated that his case was prejudiced thereby. *Commonwealth v. White*, 28 Mass. App. Ct. 417 (1990). I find nothing in this court's opinion that justifies a different conclusion. I dissent.

I would adopt the Appeals Court's opinion in its entirety. See 28 Mass. App. Ct. 417 (1990). It is not necessary to reproduce the Appeals Court's analysis here. Instead, I confine my remarks to those elements of this court's opinion with which I do not agree.

1. *Conduct of defense counsel.* The court dismisses counsel's failure to interview Collette Wiggins and to call her to testify with a neat syllogism: (a) it was a "legitimate goal" of defense counsel to minimize the number of times the jury heard the complainant's allegations of rape; (b) Wiggins would have repeated the complainant's allegations; therefore (c) counsel's decision not to call Wiggins to the stand was not "manifestly unreasonable." *Ante* at 273. This analysis, though logically precise, fails to take into account the probative value of different aspects of Wiggins's possible testimony.

While Wiggins may have repeated the complainant's allegation, such testimony would merely have been cumulative of the fresh complaint testimony of others and would be only slightly significant as corroboration. On the other hand, Wiggins could also have testified that the complainant initially

[1] I agree with the court's conclusion that counsel's failure to inform the judge of the complainant's initial conversations with her husband, Wiggins, and Kelly when the judge was considering the admissibility of fresh complaint evidence was not prejudicial, and therefore did not constitute ineffective assistance. See section 2, *ante* at 277.

alleged only sexual harassment and stated that she had escaped the defendant's advances. This testimony was potentially devastating to the prosecution's case, which was built largely on the credibility of the complainant. Nevertheless, the defendant's lawyer chose to ignore this evidence (not even telephoning Wiggins to confirm her version of the event), and relied instead on much less compelling impeachment evidence, such as the complainant's failure to scream.

In essence, the asserted rationalization for this decision is that counsel feared that the complainant's allegation of rape, even though its repetition was redundant, would ring in the jurors' ears longer than the complainant's initial denial that the rape had occurred, which the jury never heard.[2] This calculation of the risks and rewards inherent in calling Wiggins to the stand is indefensible, the deference owed to tactical decisions of defense counsel notwithstanding. In light of the potential impact of Wiggins's powerful impeachment testimony in a case where the prosecution relied almost entirely on the credibility of the complainant (producing no compelling physical evidence and no corroborating testimony apart from the fresh complaint witnesses), counsel's omission was manifestly unreasonable. That counsel had a "legitimate goal" in deciding not to call Wiggins to testify (to wit, minimizing the number of times the jury heard the complainant's allegation of rape) does not, without more, justify his decision.

The defense attorney's decision not to offer Kelly's testimony, though it involves a greater number of variables, is also unjustifiable. The court again rides to the lawyer's rescue, however, by failing to weigh the potential costs and benefits of the omitted testimony.

---

[2]Counsel also asserted that he did not call Wiggins to testify because he was afraid she would reveal that Motorola had fired the defendant but not the complainant, suggesting that the company believed her and not him. As the Appeals Court recognized, however, this evidence was entirely irrelevant and could have been excluded by a motion in limine. 28 Mass. App. Ct. 417, 423 (1990).

The court states that counsel reasonably decided not to interview Kelly or call him to testify because he did not want the jury to learn that the defendant "had told Kelly what amounted to two different stories." In reaching this decision, the court concludes, counsel properly relied on the defendant's statement to counsel that, in two telephone conversations with Kelly, the defendant first denied any sexual contact with the complainant and then admitted to consensual sexual intercourse with her. *Ante* at 274.

Concededly, a defense attorney is entitled to rely on his client's description of the events underlying a criminal charge. *Strickland* v. *Washington*, 466 U.S. 668, 691 (1984). When a lawyer subsequently gains information that supplements his client's version of events, however, common sense dictates that the reasonableness of his tactical decisions be judged based upon all the evidence in his possession.[3] In this case, counsel learned through discovery that the complainant, too, had changed her story, at first telling Kelly that she had escaped the defendant's advances and alleging only sexual harassment by the defendant. Thus, the issue is not simply whether it was reasonable for counsel to rely on his client's description of the conversations with Kelly.

Rather, the issue is the reasonableness of counsel's calculation that, on balance, the damage to the defendant's case would outweigh the damage to the prosecution's case if it were revealed that both the defendant and the complainant had changed their stories. Given the considerable potential of Kelly's testimony to create reasonable doubt by calling into question the complainant's credibility, I conclude that counsel's determination was manifestly unreasonable. Counsel's decision not to interview Kelly, therefore, was also manifestly unreasonable.

Furthermore, as the court recognizes, had counsel interviewed Kelly, he would have discovered that Kelly's testi-

---

[3]Obviously, this statement does not imply that defense lawyers may not rely on their client's statements, so that they must "investigate and confirm virtually every statement that a client makes, no matter how apparently or circumstantially accurate," as the majority suggests. *Ante* at 274.

mony would not have suggested that the defendant had contradicted himself. Instead Kelly would have testified that the defendant first denied only a charge of sexual harassment and later admitted only having consensual sexual intercourse with the complainant. See *ante* at 269 n.4. Both statements are entirely consistent with the defense's theory of consent.

As the preceding discussion suggests, I disagree with the court's estimation of the impeachment value of Kelly's and Wiggins's possible testimony concerning the complainant's changing her story. The court concludes that this testimony would be problematic for two reasons. First, according to the court, the complainant's inconsistent allegations (first that the defendant forcibly fondled her, and then that he raped her) would both rebut the defendant's consent theory. *Ante* at 274. Since the jury had already heard the complainant's version of a violent rape, the incremental value of her initial, lesser allegation as rebuttal would be negligible. Second, the court concludes that defense counsel could reasonably predict that a jury would not forget that the complainant "never abandoned her charge that the defendant dealt with her violently." *Ante* at 274-275. This conclusion overlooks an essential difference between the complainant's first and second allegations: the defendant was only on trial for one of them. That is, even if the jury remembered that the complainant consistently alleged that the defendant "dealt with her violently," that allegation does not amount to rape. Therefore the omitted testimony would have raised doubts about the complainant's credibility as to the ultimate question — whether the defendant raped her.

In short, the testimony that defense counsel chose to omit was less damaging to the defendant's case than the court suggests and was the most compelling impeachment evidence available. Of course a reviewing court should examine the tactical or strategic decisions of the defendant's lawyer with some deference. *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979). Under the facts of this case, however, where the balance of risks and rewards so favored calling Kelly and

Wiggins to testify, I conclude that the decision not to use their testimony was "manifestly unreasonable."

2. *Prejudice.* The court concludes that the omission of Kelly's and Wiggins's testimony did not prejudice the defendant's case because the drawbacks of such testimony would have offset the advantages. Again, I disagree.

The omitted testimony was the most potent impeachment evidence available to the defendant. Like most evidence, it was imperfect (from the defendant's perspective): by calling Kelly and Wiggins to the stand, defense counsel risked admitting redundant fresh complaint testimony and testimony that the complainant consistently alleged at least that the defendant forcibly assaulted her. The first point, however, would have added nothing of substance to the evidence the jury heard, and the second would not have restored the complainant's credibility. The evidence that the complainant had changed her story, by contrast, would directly and substantially affect the complainant's credibility, which was at the heart of the prosecution's case. Therefore, on balance Kelly's and Wiggins's testimony would clearly have favored the defendant.

The court states that Kelly's testimony in particular would have been damaging to the defense because Kelly's recollection of the conversations with the defendant "fundamentally" paralleled the defendant's recollection. The record does not support this conclusion. The defense attorney testified, "[The defendant] originally . . . told me that when he spoke to James Kelly . . ., he initially and vehemently denied that he had anything to do with [the complainant] on that occasion, that night." However, Kelly testified that in their initial telephone conversations the defendant never denied that something "of a sexual nature" occurred between the defendant and the complainant. Instead, Kelly stated, the defendant denied only a charge of sexual harassment and subsequently admitted only to consensual sexual intercourse with the complainant. See *ante* at 269 n.4. These statements are entirely consistent with the consent defense. The court's characterization of Kelly's testimony as describing simply a denial fol-

lowed by an admission is at best superficial and at worst misleading. In fact, Kelly's testimony does not support the inferences of guilt or dishonesty that the court draws from it. See *ante* at 276.

It is impossible, of course, to conclude with absolute certainty how the testimony of Wiggins and Kelly would have influenced the jury's decision, if at all. However, the case against the defendant rested squarely on the testimony — and thus the credibility — of the complainant. The defense lawyer chose nevertheless to omit potent testimony impeaching the complainant's credibility, and the defendant was subsequently convicted essentially on the complainant's word. Under the unique circumstances of this case, I find it impossible to conclude that the defendant has not met his burden of showing that "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977).

In sum, I conclude that defense counsel's decision neither to interview Kelly and Wiggins nor to call them to testify was "manifestly unreasonable" and was prejudicial to the defendant's case. Therefore I do not agree with the court's conclusion that the defendant has failed to establish the elements of ineffective assistance of counsel. I respectfully dissent.