COMMONWEALTH *vs.* MATTHEW A. FIONDA.

No. 90-P-757.

Middlesex. October 8, 1991. - September 22, 1992.

Present: PERRETTA, FINE, & JACOBS, JJ.

*Rape. Rape-Shield Statute. Practice, Criminal*, Instructions to jury, Assis-
tance of counsel. *Evidence*, Sexual conduct, Relevancy and materiality.
*Constitutional Law*, Assistance of counsel.

At a rape trial at which much of the evidence concerned a previous inci-
dent of sexual conduct between the defendant and the victim, the judge
correctly instructed the jury that for evidence of past sexual intercourse
to be relevant and entitled to any weight on the question of the victim's
consent on the night of the alleged rape, the victim had to have been
capable of consenting on the prior occasion and the prior incident of
sexual intercourse had to have been consensual. [321-323]

Ineffectiveness of defense counsel at a rape trial was not shown by coun-
sel's failure to retain an expert to conduct certain scientific tests, where
such tests would have had no real, exculpatory probative value [324-
325]; nor by counsel's decision, for which tactical grounds existed, not
to object to certain questions put to the defendant during his cross-
examination [325-326]; nor by counsel's not requesting a jury instruc-
tion that the evidence did not warrant [326-327].

INDICTMENTS found and returned in the Superior Court
Department on August 31, 1989.

The cases were tried before *J. Harold Flannery*, J., and a
motion for a new trial was heard by him.

*Richard J. Inglis* for the defendant.

*Rosemary D. Mellor*, Assistant District Attorney, for the
Commonwealth.

PERRETTA, J. Following a trial by jury, the defendant was
found guilty of rape and assault and battery by means of a
dangerous weapon, a champagne bottle. His appeal brings
before us assertions of error in the jury instructions, numer-
ous allegations of ineffectiveness on the part of his trial attor-
ney, and a claim of newly discovered evidence. Finding no

reversible error, we affirm the convictions and the order denying his motion for a new trial.

1. *The evidence.* In April of 1989, the defendant was employed as the night manager of a cocktail lounge, also described as a "Fifties" club. He hired the victim as a waitress. It was not unusual for the defendant and other employees, including the victim, to remain at the lounge and socialize. There was no dispute that after the lounge closed on the night of June 30, 1989, the defendant invited the victim to have a drink with him. She accepted, and they went into his office. He brought a bottle of champagne and two glasses which he had taken from the bar.

According to the testimony of the victim, she asked the defendant if he had change for the cigarette machine. He left the office and returned with a carton of cigarettes. She was seated on the floor. As she rummaged through her purse looking for matches, the defendant knelt beside her. Seeing that he had removed his clothing from the waist down, the victim announced that it was time for her to leave.

The defendant began pulling at the victim's clothing, trying to remove her undergarments. She tried to block his efforts by holding her skirt down. The defendant would not listen and repeatedly asked her to beg him for oral sex. The victim described how the defendant held her to the floor, reached for the bottle on the desk, and inserted it into her vagina. He ignored her exclamations of pain and demands that he stop. After he removed the bottle, he inserted his penis and had intercourse with the victim.

After the defendant ejaculated and removed himself from her, the victim grabbed her underpants and purse. She fled from the office. Because she could not open the door leading out of the building to the parking lot, the defendant was able to catch up with her. He was carrying the bottle and the glasses. Once outside, the defendant threw the bottle into the woods surrounding the lounge and lot. He tossed the glasses into the backseat of the victim's car and told her to keep them for the "memories."

Approximately one week later, the victim complained to the police. She brought them to the area where the defendant had thrown the bottle. They were able to retrieve it. When the police arrested the defendant, he told them that he and the victim had engaged in sexual relations on a prior occasion but that they were both drunk at the time.[1]

Consent was the theory of defense. The defendant testified that he did have sexual intercourse with the victim on the night and early morning of June 30 - July 1, 1989. He denied, however, that he had inserted the champagne bottle into the victim. Rather, he had poured champagne over her stomach and vaginal area in order to make it easier for him to satisfy her demands that he perform cunnilingus.

Evidence of the prior incident of sexual conduct between the defendant and the victim was relevant to the sharply disputed issue of consent. There were four versions of this prior episode, and all differed in some respects except as to the following facts. One night in early June, 1989, the defendant, the victim, and two other lounge employees, Robert and Rachel,[2] were at the lounge at closing time. The four engaged in conversation about their sexual fantasies for a short time. Because of the defendant's concern about their presence in the lounge after closing, the group went outside to Robert's car.

Robert and the defendant made drinks to take with them. As they sat in Robert's car drinking, they played a game. It was called Truth or Dare, and each player was allowed to choose to answer a question truthfully or to perform an act dared by the others.[3] It is at this point that the versions of events differ.

---

[1]Much of the evidence at trial concerned a past incident of sexual conduct between the defendant and the victim. The defendant had brought a motion to admit this evidence pursuant to G. L. c. 233, § 21B. After a pretrial evidentiary hearing on the motion, the trial judge concluded that he would allow evidence of this past incident to be introduced at trial. See generally *Commonwealth* v. *Grieco,* 386 Mass. 484 (1982).

[2]As there is no need to reveal the real identities of these witnesses, we have assigned them fictitious names.

[3]The defendant was twenty-three years of age at this time, and the victim was nineteen.

Neither the victim nor Rachel related the specifics of the defendant's sexual fantasies. Their testimony on this part of the evening was given in general terms and was to the effect that the defendant had boasted to Robert about his accomplishments with women. The victim could remember little of the subsequent events. She testified that she had about six or seven drinks while in the car and that she was quite drunk. She could recall accepting a dare to kiss the defendant, being helped to her car, which was parked near Robert's, and passing out.

The victim related that she argued with the defendant the next day at work. Upon her arrival at the lounge, she heard from others that the defendant was claiming to have slept with her. Confronting the defendant, the victim informed him that she had no memory of having had sex with him and that if she had engaged in such conduct with him, it was a mistake. Although she and the defendant did not speak to each other for several weeks thereafter, she still liked him. When he called to ask her to lunch, she could not decide whether to accept his invitation. Her next encounter with him was on the night of June 30.

Rachel's memory of the earlier episode fills in the gaps in the victim's testimony. Rachel testified that the victim became so drunk in the car that she, Rachel, told the defendant not to give the victim anything more to drink. He would not listen to her and persisted in putting drinks to the victim's mouth. Rachel stated that while playing Truth or Dare, all four participants in the game lifted, opened or removed their clothing to varying degrees of undress.

It was Rachel's memory that the defendant helped the victim to her car. He returned about forty-five minutes to an hour later and knocked on the window of Robert's car to let Rachel and Robert know that he was leaving for the night. Rachel then left Robert, explaining that she did not want the victim to be alone. When she went to the victim's car, she found the victim lying across the seat, drunk and mumbling. Rachel drove to her home, where the victim spent the remainder of the night.

Robert and the defendant remembered the evening much differently. While in Robert's car, everyone had one and one-half drinks. Not enough had been made for anyone to have more. Everyone was sober and very aware of what they were doing. The victim had opened her blouse and removed her bra and pantyhose. The defendant had taken off his shirt. The victim was kissing his chest and insisting that she wanted to have sex with him.

The defendant testified that, in the lounge, the victim shared her sexual fantasy with the group; she wanted to be stranded on an island with three or four handsome men. While playing Truth or Dare, he and the victim were in the back seat. When the defendant and the victim realized that Robert and Rachel wanted to be alone, they decided to leave. After walking the victim to her car, the defendant went to get into his truck to leave for the night. The victim, however, invited him into her car.

Once the defendant was inside the victim's car, she questioned him about his broken engagement to marry. The victim related to the defendant that she had told her mother all about him, that her mother had advised her to "go for it," that she had decided to follow her mother's advice, and that she wanted to have sex with him. The defendant testified that the victim helped him to undress, and they had intercourse. When they were through, he invited her to go with him to get something to eat, but she was not hungry. He left her car and went to check on Robert and Rachel. They were in the backseat of Robert's car, and the defendant decided not to disturb them. He went back to his truck and drove out of the lot. At that time, the victim was in her car, presumably waiting for Rachel.

This version of that earlier occasion was substantially corroborated by Robert. He testified that, after the victim and the defendant left him and Rachel, he could see them in the victim's car. The victim was sitting in the defendant's lap, facing him. They were embracing as they moved together in an up and down fashion. Robert's observations led him to

believe that the defendant and the victim were having intercourse.

Another employee at the lounge was called by the defendant to testify. He related that he had been dating the victim. The day after the early-June incident, the victim came to work and told him that she slept with the defendant. She explained to the witness that she preferred that he hear about it from her rather than someone else. The witness was nonetheless hurt and angry, and he lost all interest in the victim.

2. *The jury instructions.* In charging the jury on the crime of rape and the element of force, the trial judge explained the relevance of the evidence of the prior sexual activity between the defendant and the victim. He told the jury that if they believed the testimony that the prior act of sexual intercourse was consensual, they could consider the past incident in deciding whether the victim consented on the occasion in issue. He also instructed the jury that if the evidence of past sexual intercourse was to be relevant and entitled to any weight on the question of the victim's consent on the night of June 30, the prior incident of sexual intercourse had to have been consensual. As to the victim's consent to intercourse in early June, the trial judge stated: "If by reason of sleep or intoxication or drunkenness or stupefaction or unconsciousness or helplessness a person is incapable of consenting, an act of sexual intercourse occurring with that person during such incapacity is without the valid consent of the incapacitated person."

It is the defendant's argument that because evidence of the victim's past sexual conduct with the defendant was admitted pursuant to G. L. c. 233, § 21B (note 1, *supra*), the jury were entitled, as matter of law, to consider the entire episode. The trial judge's instruction, however, limited their consideration to the act of sexual intercourse and precluded them from also taking into account the victim's other sexual conduct that night in early June: as more specifically described by the defendant, "that most of the conversation that evening was of a sexually suggestive nature and that this led to the

playing of a game called 'truth or dare' which included kissing, petting, disrobing, and other sexual behavior in which . . . [the victim] was a full and active participant."

Even assuming that the defendant's broad reading of the term "sexual conduct," as used in § 21B, is correct and that a jury could be permitted in some situations to consider sexual conduct other than intercourse, we see no error in the instruction given in this case. If past sexual conduct, even that short of intercourse, is to have any relevance on the issue of consent, it must be shown to have been consensual. Two versions of one evening were presented to raise a single question: whether the victim was sober and capable of consenting to all the activities that night or whether the victim was so intoxicated that she was unaware of what, if anything, she was doing.

The evidence presented in support of the defendant's theory at trial shows that it was his contention that the victim liked and was attracted to him and that, on the prior occasion, she freely and actively engaged in an evening of sexual activity which culminated in intercourse with him, at her request. The victim, however, although readily admitting to having been attracted to the defendant and to having kissed him, could not recall the rest of the evening because of her state of intoxication.

Our review of the evidence, the closing arguments, and the jury instructions in their entirety leads us to conclude that the jury were well aware of the primary issue pertaining to the relevance of the prior activities: was the victim a sober and consenting partner? The answer to that question turned on credibility and not an act-by-act analysis of the evening. We do not think that the trial judge, by focusing on intercourse in his instructions, precluded full and fair consideration of the defendant's theory of defense by the jury. See *Commonwealth* v. *Blair*, 21 Mass. App. Ct. 625, 630 (1986).

As for those activites in which the victim admitted to engaging while sober, risqué conversation and kissing, we agree with the trial judge. Such conduct is not probative of whether the victim consented to intercourse on the later oc-

casion. See *Commonwealth* v. *Grieco*, 386 Mass. 484, 489 (1982).

The defendant also claims that he was prejudiced by the trial judge's instruction concerning the effect of "sleep or intoxication or drunkenness or stupefaction or unconsciousness or helplessness" on consent. He argues that this instruction allowed the jury to infer that the prior episode was also rape.

This argument is puzzling. The defendant was put on notice from the outset, see note 1, *supra*, that any defense of consent based upon past consensual sexual conduct would be met with evidence of intoxication. The evidence warranted the instruction, and the defendant does not (and cannot) argue that the instruction was an incorrect statement of the law. See *Commonwealth* v. *Ascolillo*, 405 Mass. 456, 463-464 (1989), and cases therein cited.

This instruction was given as part of the explanation of the relevance of the prior incident: if the jury found that the victim was incapable of consenting to the past incident of sexual intercourse, then that episode had no relevance to the events of June 30. It was fair, even-handed, and limited. Taking the instructions in their entirety, we do not see the risk alleged by the defendant: that the jury might have been misled or prejudicially influenced in their consideration of the charges. Compare *Commonwealth* v. *Leavitt*, 17 Mass. App. Ct. 585, 594-596 (1984).[4]

3. *Incompetency of counsel.* In his motion for a new trial, the defendant claimed that his trial counsel rendered ineffective assistance in three critical areas. None of these allegations is supported by the record.

---

[4]The defendant also makes a cursory argument that the trial judge's instructions concerning the Commonwealth's burden of proving force had the effect of suggesting to the jury that, on June 30, the victim might have been restrained by alcohol, drugs, unconsciousness, or fear, from "exercising her free will." We found no such suggestion in our reading of the instructions. The instructions given by the trial judge were in careful and understandable language. When he explained by examples, he spoke in general terms; when he instructed as to the issues in this case, he spoke in terms warranted by the evidence.

a. *Lack of forensic expert.* After the champagne bottle was retrieved from the woods by the police, it was examined by the Commonwealth's expert witness, a forensic chemist. He found epithelial cells on the upper neck area of the bottle. As explained by this expert, epithelial cells are found on all parts of the human body and are especially abundant in the area of the mouth and the vaginal tract.

In seeking a new trial, the defendant argued that trial counsel's failure to retain a forensic expert to examine the bottle precluded the discovery of possibly exculpatory evidence. His motion was accompanied by an affidavit from a forensic pathologist. This pathologist opined that in some situations certain tests could be conducted to determine the origin of epithelial cells as well as the gender of their contributor. Relying on the pathologist's opinion and *Commonwealth v. Haggerty*, 400 Mass. 437 (1987), the defendant argues that he is entitled to a new trial and additional discovery.

We need not consider whether trial counsel was remiss in not retaining an expert to examine the bottle and cell slides. It is enough to state that any assumed failure on his part did not deprive the defendant of an "otherwise available, substantial ground of defence." *Commonwealth v. Saferian*, 366 Mass. 89, 96 (1974).

There was testimony that both the defendant and the victim touched the bottle with their hands and that the defendant drank directly from the bottle before throwing it into the woods. The testimony of the Commonwealth's expert was remarkable for its lack of probative significance. It was neutral and corroborated neither the victim nor the defendant: the cells could have come from the defendant's mouth or the victim's vagina. Contrast *Commonwealth v. Haggerty*, 400 Mass. at 438-439.

The opinion of the defendant's expert, as set out in the affidavit, shows that any test which he could have conducted would not have produced any real exculpatory evidence. Even the most favorable discovery, that all of the epithelial cells on the bottle belonged to the defendant, would be entirely undercut by the defendant's own testimony that the

victim held the bottle in the course of the evening.[5] More-over, there is nothing in the affidavit, no matter how read, which shows that the affiant's opinions contradict the victim's testimony. Compare *Ibid.*

Even were we to view trial counsel as remiss for failing to retain an expert to examine the bottle and cell slides, we would conclude that there was no resulting prejudice to the defendant's case by reason of any such failure. See *Common-wealth* v. *White*, 409 Mass. 266, 275 (1991). Our conclusion (that if the tests described in the affidavit were conducted, the results would have no real, exculpatory probative value) also disposes of the defendant's argument concerning the de-nial of his postconviction request to inspect the bottle and cell slides.

b. *Failure to make objections.* Trial counsel did not object to three questions put to the defendant during his cross-ex-amination on the topic of statements he made that night in early June in respect to his sexual fantasies. In disposing of this complaint, we begin by noting that the jury were fully aware of the fact that such a conversation took place. The victim and Rachel had been cross-examined about this con-versation at length.

On direct examination, the defendant related to the jury his memory of the victim's sexual fantasy: she wanted to be stranded on an island with three or four handsome men. The record before us shows that the prosecutor had a good faith basis for asking the defendant whether he had made the three specific statements expressed in the questions.[6] Those statements to the group, if believed to have been made and irrespective of the truth of the matters asserted therein, would have corroborated the victim's testimony that the de-fendant had boasted about his relations with women. When

---

[5] The expert described no test that could otherwise corroborate the de-fendant's assertion that he did not insert the bottle into the victim's vagina.

[6] The prosecutor filed an affidavit in opposition to the motion for new trial in which she stated that in preparing for trial, both the victim and Rachel related the defendant's specific statements to her.

the defendant denied having made them, the prosecutor did not pursue the matter.

Trial counsel reasonably could have decided that, in view of the question he put to the victim and the defendant, objections to the three questions, even if sustained, would be more harmful than helpful to the defendant. In his closing argument, he skillfully wove the defendant's denials with the claimed inconsistencies and weaknesses in the victim's testimony. The trial judge, in his charge to the jury, instructed that questions of counsel do not constitute evidence.

As stated in *Commonwealth* v. *White*, 409 Mass. at 277: "This is not a case where defense counsel took questionable unilateral action, was excessively sloppy, gave away the defense, failed to acquaint the defendant with the main theory of his own case, or otherwise seriously bumbled a critical issue." The trial judge concluded that the "defendant was represented vigorously and skillfully." There is no basis for disturbing his judgment. *Ibid.*

c. *Good faith belief.* The defendant correctly acknowledges that he was not entitled, as matter of law, to an instruction as to a good faith but mistaken belief that the victim had consented to intercourse. See *Commonwealth* v. *Ascolillo*, 405 Mass. 456, 463 (1989); *Commonwealth* v. *Simcock*, 31 Mass. App. Ct. 184, 190-192 (1991), and cases and authorities therein discussed. He argues, however, that trial counsel should nonetheless have requested such an instruction on the authority of *Commonwealth* v. *Cordeiro*, 401 Mass. 843, 850-851 (1988).

Even were a trial judge inclined to give such an instruction, it would have to be warranted by the evidence. There is no evidence in this case upon which the jury reasonably could have decided that the defendant had acted on the basis of some conduct by the victim which gave him a good faith but mistaken belief that she had consented. Moreover, that was not the theory of the case at trial. The victim testified to her words and actions, none of which was ambiguous. She told him to stop, and she tried to prevent him from removing her underpants. The defendant did not claim to have been

confused, misled, or mistaken. He contradicted the victim's testimony and told the jury that the victim was an active partner who gave her actual consent and asked him, in clear and unambiguous terms, to perform sexual acts, including intercourse, with her. The question for the jury was whether they believed the victim or the defendant.

To prevail on a claim of ineffective assistance of counsel, it is necessary to show more than a difference of opinion as to how the defense should have been conducted. See *Commonwealth* v. *White*, 409 Mass. at 272-276. The requisite demonstration has not been made as to this or any of the alleged shortcomings of trial counsel.

4. *Newly discovered evidence.* We see no need to detail the statements set out in the numerous affidavits which accompanied the motion for new trial. As correctly evaluated by the trial judge, nothing in those affidavits was "previously undiscoverable or notable." See *Commonwealth* v. *Toney*, 385 Mass. 575, 581 (1982); *Commonwealth* v. *Doherty*, 394 Mass. 341, 347 (1985); *Commonwealth* v. *Grace*, 397 Mass. 303, 312 (1986); *Commonwealth* v. *Moore*, 408 Mass. 117, 127 (1990).

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*