# United States Court of Appeals

## For the First Circuit

No. 01-2166

JUAN CASTILLO,

Petitioner, Appellant,

v.

JAMES MATESANZ,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Selya and Lipez, Circuit Judges,
and Ponsor, District Judge.*

Amy Baron-Evans, with whom Dwyer & Collora were on brief, for petitioner.
James J. Arguin, Assistant Attorney General, with whom Thomas F. Reilly, Attorney General, was on brief, for respondent.

October 22, 2003

_____

* Of the United States District Court for the District of Massachusetts, sitting by designation.

**LIPEZ, Circuit Judge**. This petition for habeas corpus seeks relief from the denial of petitioner's motion for a new trial in the state court. In pursuing a new trial, petitioner argued that (1) the trial court's denial of defense counsel's motion for a continuance at the beginning of the trial was "so arbitrary as to violate due process," and (2) defense counsel's subsequent conduct at trial violated the petitioner's Sixth Amendment right to counsel. In asserting those arguments here, petitioner contends that the state courts' denial of his motion for a new trial was contrary to, and an unreasonable application of, clearly established federal law. Unpersuaded, we affirm the decision of the district court denying the petition for habeas corpus relief.

**I.**

On September 27, 1996, petitioner, Juan Castillo ("Castillo"), was convicted by a jury in the Massachusetts Superior Court of trafficking in a controlled substance (cocaine), and was sentenced to a mandatory minimum sentence of fifteen years. Castillo appealed his conviction to the Massachusetts Appeals Court. On April 15, 1998, Castillo filed a motion in the Superior Court for a new trial arguing that (1) the trial court abused its discretion in denying defense counsel Christine Fernandez ("Fernandez") a continuance, and (2) that Fernandez's lack of knowledge of the law, failure to interview or prepare Castillo, mischaracterization of Castillo's testimony in closing argument,

-2-

and failure to call relevant witnesses was ineffective assistance of counsel under the Massachusetts Declaration of Rights and the Sixth Amendment. By an order entered June 15, 1998, the trial judge denied the motion without discovery or an evidentiary hearing, finding that no continuance was necessary because the filing of counsel's appearance was a representation that she was "ready, willing, and able" to try the case, and that her performance was not ineffective. Commonwealth v. Castillo, No. 9477 CR 3461 (Mass. Superior Ct. June 15, 1998)(order denying defendant's motion for new trial). Castillo's appeal from this order was consolidated with his direct appeal. On June 8, 1999, the Appeals Court summarily affirmed Castillo's conviction and the denial of his new trial motion "substantially for those reasons set out in the trial judge's memorandum of decision." Commonwealth v. Castillo, No. 97-P-1937 (Mass. App. Ct. June 8, 1999)(mem. & order affirming defendant's conviction and denial of motion for a new trial). The Supreme Judicial Court of Massachusetts denied further appellate review. Commonwealth v. Castillo, No. FAR-10783 (Mass. Sept. 27, 1999)(notice of denial of further appellate review).

On September 11, 2000, Castillo petitioned the federal district court for habeas corpus relief under 28 U.S.C. § 2254, claiming that the state court's rejection of his two new trial claims -- a due process violation in denying the continuance and ineffective assistance of counsel -- warranted habeas relief. On

-3-

March 22, 2001, the district court referred the petition to a United States magistrate judge for a recommended disposition. On July 6, 2001, the magistrate judge issued a thorough Report and Recommendation recommending that the petition be dismissed. On July 17, Castillo timely objected to three factual determinations contained in the report.[1] By an order dated July 27, 2001, the district court rejected Castillo's objections and adopted the report in its entirety.[2] On August 1, 2002, the district court

---

[1] The Report and Recommendation of the magistrate judge contained a clear notice that "any party who objects to these proposed findings and recommendations must file a written objection thereto . . . within 10 days. . . . [F]ailure to comply with this rule shall preclude further appellate review." Castillo v. Matesanz, No. 00-11854 (D. Mass. July 6, 2001) (Report and Recommendation of United States magistrate judge). Despite this clear warning, Castillo made limited objections to the magistrate judge's report. Respondent rightly argues that "none of the proposed factual findings [to which petitioner objected], even if erroneous, provides a basis for habeas relief. The remaining aspects of petitioner's appeal comprise matters to which no objection was made and, therefore, are waived and not properly before this Court." In most circumstances we would enforce this important rule of waiver. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271 (1st Cir. 1988) ("[O]nly those issues fairly raised by the objections to the magistrate's report are subject to review in the district court and those not preserved by such objection are precluded on appeal."). However, this rule is procedural, not jurisdictional. Thomas v. Arn, 474 U.S. 140, 146 (1985). Strictly applied here, this rule would mean that we would not be addressing the merits of any of Castillo's arguments on appeal, and there might be further claims of ineffective assistance of counsel in these post-conviction proceedings. In the interest of finality, therefore, we proceed to affirm on the merits the district court's denial of habeas relief.

[2] Because the district court accepted and adopted the detailed Report and Recommendation of the magistrate judge, we do not distinguish between the two judicial officers in the interest of simplicity. Rather, for the duration of the opinion, we refer

-4-

explained its decision to grant Castillo a certificate of appealability. "While a strong case has been made that counsel's performance fell below an objective standard of reasonableness because of her utter lack of preparation, I agreed (and still agree) with the magistrate judge that petitioner has not shown that prejudice resulted. Nonetheless, habeas appellate counsel has valiantly made enough of a showing to persuade me that an appeal is appropriate." <u>Castillo</u> v. <u>Matesanz</u>, No. 00-11854-PBS (August 1, 2002) (certificate of appealability).

**II.**

We first give a brief summary of the circumstances of the offense and some pretrial history. We then recount the facts relevant to the request for a continuance and the ineffective assistance of counsel claims.

**A. The Offense and Some Pretrial History**

At about 8 p.m. on October 30, 1994, two police officers for the city of Lynn received a radio report of a disturbance at 102 Cottage Street. Upon arrival, the residents of the first floor apartment let the officers into the three-unit building and directed them upstairs. The officers proceeded to the second floor, which was empty and unlit, where they heard footsteps coming from the third floor. Officer Griffin proceeded to the third floor apartment and knocked on the door, identifying himself as

to the determinations below as those of the district court.

"policia." Officer Hogan went up the back stairs to the third floor, where he heard the back door unlock and saw Castillo begin to emerge from the doorway. Castillo then turned and went back into the apartment. Officer Hogan entered through the back door, saw a second man in the apartment's bathroom holding a plastic bag containing a white substance, and heard the toilet flushing. The officer then saw a third man in the kitchen making a throwing gesture towards the window. On the ground beneath the kitchen window, the police later recovered two clear plastic bags containing approximately 169 grams of cocaine. Castillo and a fourth man were standing next to the kitchen table, on which Officer Hogan observed a partially open brown paper bag containing several plastic sandwich bags filled with a white powder, and two digital scales. Castillo was never seen in physical custody of any controlled substance. The officers arrested Castillo and brought him to the police station, where officers found a beeper and $467 in cash on his person.

On December 14, 1994, a Massachusetts grand jury indicted Castillo for trafficking in 200 grams or more of cocaine, and conspiracy to violate the Controlled Substances Act. Mass. Gen. Laws Ann. ch. 94c, §§ 32E, 40 (2003). At Castillo's arraignment on January 11, 1995, attorney Kirk Bransfield was appointed to represent him. After deciding a variety of pretrial motions and after a number of continuances, the trial court scheduled the

beginning of trial for December 13, 1995.[3]  Castillo failed to appear on December 13, and an arrest warrant issued.  Approximately six months later, Castillo was arrested at a New York airport and remanded to Massachusetts for trial.  Trial was scheduled to begin on September 23, 1996.

## B.  Attorney Fernandez's Appearance

On August 5, 1996, Christine Fernandez, an attorney with the New York law firm of Aranda & Guttlein, filed a motion to appear pro hac vice in this matter.  On the same day, attorney Andres M. Aranda, a partner of the Aranda & Guttlein law firm, also moved to appear pro hac vice but his motion was not docketed or acted upon by the court.  In an affidavit filed in support of her motion, Fernandez stated that she had been a member in good standing of the New York bar since 1996 and that she "specialize[d] in criminal and federal law."  On September 9, Fernandez appeared in person before a Superior Court judge, who allowed the motion to appear pro hac vice on the express "condition that the trial date of September 23, 1996 remain the scheduled trial date and that the allowance of this motion not delay the trial."  On that same day, Fernandez filed a notice of appearance, and attorney Bransfield, the court-appointed counsel, withdrew.

---

[3]  Although all of the men present in the apartment on the night in question were arrested, Castillo was tried alone.

On September 12, 1996, attorney Jorge Guttlein ("Guttlein"), another partner of the Aranda & Guttlein law firm, sent a letter to the court together with an undated motion to appear pro hac vice. In the letter, Guttlein acknowledged that Castillo's trial was scheduled for September 23, 1996, but requested that trial be continued until October 17 because he had a scheduling conflict. The trial court treated this letter as a motion for a continuance, which it denied. Castillo's case was subsequently transferred from Essex Superior Court to Lawrence Superior Court for trial on September 24, 1996. Guttlein appeared before the Lawrence Superior Court on September 24, 1996, and his motion to appear pro hac vice was allowed that day. Castillo's case was not called for trial that day but was continued to the next morning.

Fernandez appeared in court the next morning and informed the judge that Guttlein had been "called back to New York late yesterday afternoon because his wife was ill." Fernandez stated that she was appearing on Castillo's behalf and that she had reviewed all the pretrial motions and was prepared to argue them, but that she had a "series of requests" regarding her "late entry into the case this morning." She sought a further delay in the trial:

> I arrived in Massachusetts last night at about four a.m. because the roads were awful with the rain and everything else. I have had very little opportunity to review this file. I

> understand that we're scheduled to go forward, and I'm prepared to at least go forward with jury selection. However, I would ask your Honor please not to go forward with any testimony until I've had an opportunity to further review this file.

The trial judge responded that Fernandez's motion to appear was allowed several weeks ago "with the specific condition that it not delay the trial." Fernandez argued that at the time she was admitted to appear pro hac vice, she "was not under the impression that [she] would be trying this case" since Guttlein has been "slotted to try this case." The judge replied:

> [Y]our firm was on notice that whoever was going to try this case was going to be prepared for it. And the Court doesn't look behind appearances when you have two or three people, all of whom are on there. Everyone is presumed to be ready, willing and able to try the case.

However, the judge stated that he did not know how far they would get that day, although it seemed likely they would get through impanelment and opening statements. He deferred ruling on the request to delay any testimony until later in the day. After impanelment and opening statements, the judge recessed the proceedings for an hour and a half, stating that the Commonwealth would call its first witness following the recess and Fernandez would be called on to cross-examine the witness. Although this statement implicitly denied the request for a one-day delay of testimony, Fernandez did not voice any further objections to the schedule.

## C.  Castillo's Trial Strategy

Castillo was charged with trafficking in a controlled substance, an offense with the following elements: (1) knowing or intentional possession of a controlled substance, (2) with the specific intent to distribute the controlled substance, and (3) if the controlled substance is cocaine (as defined in Mass. Gen. Laws. Ann. ch. 94C § 31), the controlled substance has a net weight of fourteen grams or more.  Mass. Gen. Laws Ann. ch. 94c, § 32E(b). The statute sets out escalating penalties for amounts in excess of the fourteen grams necessary for conviction.  Specifically, the statute sets a mandatory minimum sentence of five years for 28 grams or more but less than 100 grams, and a mandatory minimum sentence of fifteen years for 200 grams or more.  Mass. Gen. Laws Ann. ch. 94c, § 32E(2), (4).  Two lesser included offenses of trafficking are possession with intent to distribute and simple possession.  To gain a trafficking conviction rather than the lesser offense of possession with intent to distribute, the prosecution must establish possession with intent to distribute a minimum weight of fourteen grams of cocaine.  Simple possession is merely knowing or intentional possession of a controlled substance -- there is no "intent to distribute" or minimum weight requirement. Mass. Gen. Laws Ann. ch. 94c, § 34.  The sentence for simple possession is imprisonment for not more than one year.

Castillo's trial strategy was to win a not guilty verdict by defeating the prosecution's proof of the first element of the trafficking offense: knowing or intentional possession of a controlled substance. Thus, attorney Fernandez did not contest that the substance in question found at the apartment was cocaine and that the amount of the substance was 200 grams or more. Instead, she argued that Castillo did not know there were any drugs in the apartment or that the other people in the apartment were engaged in drug dealing. Castillo was merely present in someone else's apartment where drugs happened to be found.

The Commonwealth opened its case by calling Officer Hogan to the stand, who testified to the activities he witnessed in the apartment. In accordance with her trial strategy, Fernandez established through her cross-examination of Officer Hogan that he did not see Castillo handle any of the drugs and that in order to be able to see the drugs inside the bag on the kitchen table, a person had to be standing over the bag. She further established that if Castillo had been sitting at the kitchen table he would not have been able to see into the bag that was on the table.

The following morning, the Commonwealth called Officer Griffin, who testified in a manner similar to Officer Hogan about the events leading to Castillo's arrest and added that at the police station a beeper and $467 in cash were recovered from Castillo's person. On cross-examination, Fernandez established

that not all beepers are used to conduct drug transactions and that no drugs were ever found in Castillo's possession. The Commonwealth also called Lieutenant Stevens who testified generally about the drug trade in Lynn at the time of Castillo's arrest.

At the conclusion of the Commonwealth's case, Fernandez moved for a judgment of acquittal on the ground that the Commonwealth's evidence established only Castillo's "mere presence in an apartment where narcotics" were seized and that this was insufficient to establish guilt under Massachusetts law. The judge denied the motion. Fernandez then called Castillo to the stand to explain the circumstances of his presence in Lynn and to offer his account of what transpired on the night of his arrest. Castillo testified that he was a resident of the Bronx, New York, where he lived with his wife and daughter. He worked in Manhattan delivering clothes for a weekly income of $260 to $280. He had come to Lynn to help his former mother-in-law locate his missing son, and the cash he brought with him was to buy clothes and gifts for his son. While in Lynn he met Rodriguez, a resident of the apartment, at a "telephone place" (a business providing inexpensive long distance telephone service as an alternative to pay phones), where they spoke on several occasions. On October 30, 1994, Rodriguez invited Castillo to his apartment at 102 Cottage Street. After being at the apartment for ten or fifteen minutes, Castillo testified that he got up to leave and was confronted by a police

officer as he attempted to exit the back door. Castillo denied having any knowledge of any drugs in the apartment prior to the arrival of the police officers.

After the examination of witnesses, the Court reviewed the jury charge. Fernandez rejected an instruction on simple possession offered by the trial judge. Although she initially requested a joint venture instruction,[4] Fernandez immediately objected to the judge's decision to offer such an instruction when she fully comprehended the significance of it. After receiving instructions from the judge, the jury returned a verdict that Castillo was guilty of trafficking in 200 grams or more of cocaine.

## III.

The standard of review for this habeas corpus petition is set forth in the AEDPA statute, 28 U.S.C. §§ 2244-2266 (2002). On the grounds pertinent to this case, a federal court may grant habeas relief to a state prisoner if it finds, inter alia, that the

---

[4] As the judge instructed the jury, "[i]nherent in the idea of joint venture liability is that he aided and abetted and, as so, shares the same mental intent and is guilty to the same extent as a principal who commits the crime." To establish liability under a joint venture theory under Massachusetts law, the prosecution must prove (1) that the defendant was present at the scene of the crime, (2) that the defendant had knowledge that another intended to commit the crime and that he shared that intent himself, and (3) that the defendant by agreement was willing and available to help the other in carrying out the crime if necessary. For joint venture liability, the prosecution is not required to show that "the defendant physically participated in the actual offense in the sense that he actually or constructively possessed a controlled substance."

-13-

state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. § 2254(d)(1). This section "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 404 (2000). Under the "contrary to" prong, a federal court may grant the writ if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Id. at 412-13. Under the "unreasonable application" prong, a federal court may grant the writ if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. In the latter case, the state court's determination must be unreasonable, not simply incorrect, and unreasonableness is an objective standard. Id. at 410-11. "If it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002)(en banc).

## A.  Denial of Request for a Continuance

Castillo contends that the trial court's denial of a continuance was "so arbitrary as to violate due process." In his

challenge to the state court's failure to grant his motion for a new trial on this basis, he claims that this denial constituted an unreasonable application of clearly established Supreme Court precedent[5] because it

> gave no weight to counsel's lack of preparation and experience, drew an improper presumption that counsel was "ready willing and able" to try the case from the fact of her appearance in the face of her representation to the contrary, and misrepresented the roles of the various members of the law firm in a way that is misleading and beside the point.

We disagree.

The only Supreme Court precedent that Castillo identifies for purposes of the "unreasonable application" analysis is <u>Ungar</u> v. <u>Sarafite</u>, 376 U.S. 575 (1964). The Supreme Court held that a trial judge's decision not to grant the defendant in a contempt hearing a one-week continuance did not offend the requirements of due process.

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.

---

[5]  Castillo does not argue that the trial court's denial of his request for a continuance was contrary to Supreme Court precedent.

Id. (internal citations omitted).  The Court added that "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process."  Id.  Instead, reviewing courts must examine "the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."  Id.  However, "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel."  Morris v. Slappy, 461 U.S. 1, 11 (1983).

We recently applied Ungar's case-specific inquiry to a denial of a continuance, holding that a reviewing court must look at "the reasons contemporaneously presented in support of the request for the continuance."  We also identified a number of relevant factors:

> the amount of time needed for effective preparation, the amount of time actually available for preparation, the amount of time previously available for preparation and how assiduously the movant used that time, the extent to which the movant has contributed to his perceived predicament, the complexity of the case, the availability of assistance from other sources, the probable utility of a continuance, the extent of inconvenience to others . . . should a continuance ensue, and the likelihood of an injustice or unfair prejudice attributable to the denial of a continuance.

United States v. Saccochia, 58 F.3d 754, 770 (1st Cir. 1995).

-16-

Due to the summary nature of the Appeals Court's affirmance, our review of the state courts' application of federal law to the request for a continuance requires us to review the decision of the trial court denying Castillo's motion for a new trial. In its denial of Castillo's motion for a new trial, the trial court noted that the trial originally had been scheduled for September 23, 1996, that Fernandez had presented a motion to appear pro hac vice and had made a corresponding appearance almost two months before the scheduled trial date, and that, in allowing the motion, the court put Fernandez on notice that the impending trial would not be delayed. Thus, counsel had ample time to prepare. Even in pressing her last minute request for a brief continuance, Fernandez made no representations to the trial judge that she had never before tried a case and that her inexperience might make it difficult for her to try this case under the circumstances. Furthermore, in its order denying Castillo's motion for a new trial, the trial court found that "counsel's performance during the trial did not reflect that of an attorney noticeably lacking in either experience or competence sufficient to meet constitutional standards." Commonwealth v. Castillo, No. 9477 CR 3461, slip op. at 4.

In submitting her motion to appear, Fernandez represented to the court that she was ready to try the case. Moreover, that motion was allowed on the express condition that the trial date

-17-

remain as scheduled and the trial not be delayed. At no time did Fernandez indicate to the judge that this was her first trial. To the contrary, in her motion to appear, Fernandez explicitly stated "I specialize in Criminal and Federal law." In light of the information before the trial judge at the time he made his decision and the "great deal of latitude" necessarily afforded judges in scheduling trials, Morris, 461 U.S. at 11, the decision not to grant Castillo a new trial on the basis of the denial of his request for a continuance was not an unreasonable application of Supreme Court precedent.

## B. Ineffective Assistance of Counsel

In rejecting Castillo's motion for a new trial on the basis of ineffective assistance of counsel, the trial court found that "Attorney Fernandez's performance [was not] measurably below that of an ordinarily fallible lawyer" and "defense counsel's theory of the case was not 'manifestly unreasonable.'" Commonwealth v. Castillo, No. 9477 CR 3461, slip op. at 5-6. Castillo argues that the "manifestly unreasonable" standard that the trial court applied in assessing trial counsel's tactical judgment is contrary to the standard the Supreme Court prescribed in Strickland. Castillo also argues that the state court's evaluation of Fernandez's performance was an unreasonable application of Strickland. After a brief explanation of the

-18-

Strickland standard, we explain our reasons for rejecting these arguments on the merits.

### 1. The Strickland Standard

In Strickland v. Washington, the Supreme Court set forth the controlling principles for deciding ineffective assistance of counsel claims. Under these principles, a defendant alleging ineffective assistance of counsel must establish two elements:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

Strickland, 466 U.S. at 687. In addressing the first element, "judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. A reviewing court must leave "ample room for variations in professional judgment," Ouber v. Guarino, 293 F.3d 19, 25 (1st Cir. 2002) (citing Strickland, 466 U.S. at 689), and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. Only if, "in light of all the circumstances, the identified acts or omissions of counsel were outside the wide range of professionally competent assistance," can a finding of deficient performance ensue. Id. at 690.

Even if counsel's performance is constitutionally deficient, the second element of the <u>Strickland</u> standard requires the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. While such prejudice may be presumed in a few limited circumstances, such cases are the exception. <u>See</u> <u>Bell</u> v. <u>Cone</u>, 535 U.S. 685, 695-96 (2002). Generally, the petitioner "must carry the devoir of persuasion and prove that he was prejudiced, i.e. that his attorney's parlous conduct may have altered the outcome of the case." <u>Ouber</u>, 293 F.3d at 25. However, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in [] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Strickland</u>, 466 U.S. at 697. Hence we address primarily the performance component of the <u>Strickland</u> standard.

### 2. Contrary to <u>Strickland</u>

In evaluating Castillo's ineffective assistance of counsel claim, the state court used the following standard:

[Castillo] must demonstrate that defense counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer" and that such inadequacies likely deprived the defendant of an otherwise available defense. <u>Commonwealth</u> v. <u>Saferian</u>, 366 Mass. 89, 96 (1974). Counsel's tactical judgment must be "manifestly unreasonable" to constitute ineffective assistance of counsel. <u>Commonwealth</u> v. <u>White</u>, 409 Mass 266, 273 (1991).

-20-

_Commonwealth_ v. _Castillo_, No. 9477 CR 3461, slip op. at 5-6. In his brief on appeal Castillo argues that this "manifestly unreasonable" standard is contrary to the federal standard set forth in _Strickland_. Ordinarily, we would not address this argument, as it was not raised before the district court in either Castillo's original habeas petition or in his application for a certificate of appealability. _Malave_ v. _Carney Hosp._, 170 F.3d 217, 222 (1st Cir. 1999)("It is a bedrock rule of appellate practice that . . . matters not raised in the [district] court cannot be hawked for the first time on appeal."); see _Kramer_ v. _Kemna_, 21 F.3d 305, 308 (8th Cir. 1994) (In an appeal from a denial of a writ of habeas corpus, the court declined to consider issues not raised before the district court, holding that the "[f]ailure to give the district court a first opportunity to decide the merits of an argument constitutes a waiver of that argument."); _Yohey_ v. _Collins_, 985 F.2d 222, 225 (5th Cir. 1993) (same); _Depree_ v. _Thomas_, 946 F.2d 784, 793 (11th Cir. 1991) (same).

However, an appellate court has discretion, in an exceptional case, to reach issues that were not raised below. _United States_ v. _La Guardia_, 902 F.2d 1010, 1013 (1st Cir. 1990); _United States_ v. _Krynicki_, 689 F.2d 289, 291-92 (1st Cir. 1982). We have found the exercise of such discretion to be appropriate where the appellant's challenge "raises an issue of constitutional magnitude which, if meritorious, could substantially affect [the

-21-

appellant], and future defendants . . . ." La Guardia, 902 F.2d at 1013; see Federal Credit Union v. DelBonis, 72 F.3d 921, 930 (1st Cir. 1995) ("[C]ases involving important constitutional or governmental issues may be exceptional and, as such, there should be a full treatment of all legal issues involved, whether squarely introduced by the parties or not."). Castillo's argument that the state court's "manifestly unreasonable" standard is contrary to Strickland raises an important question of law that can be resolved on the existing record and that is "almost certain to be presented in identical terms in other cases." La Guardia, 902 F.2d at 1013. The issue has been fully briefed on this appeal and was covered exhaustively at oral argument. If this constitutional claim were otherwise meritorious, failure to reach it because of a procedural default could result in "a miscarriage of justice." See id. Therefore, we address the merits of Castillo's claim.

In evaluating whether Castillo was denied effective assistance of counsel, the trial court differentiated between allegations concerning the quality of counsel's performance and those concerning the reasonableness of her tactical judgments. Commonwealth v. Castillo, No. 9477 CR 3461, slip op. at 5-6. The trial court cited Commonwealth v. Saferian, 315 N.E.2d 878, 883 (1974), for the proposition that Castillo was required to demonstrate that attorney Fernandez's performance fell "measurably

-22-

below that which might be expected from an ordinary fallible lawyer." It concluded that Castillo failed to meet this burden.

Castillo does not contest the trial court's use of the performance standard articulated by the Massachusetts Supreme Court in Saferian, which we have described as the "functional equivalent of Strickland." Ouber v. Guarino, 293 F.3d 19, 31 (1st Cir. 2002). Rather, Castillo argues that the trial court applied to counsel's tactical judgments a standard that was "contrary to" Strickland.[6] For the reasons set forth below, we are not persuaded.

In its use of the phrase "manifestly unreasonable," the trial court cited Commonwealth v. White, 565 N.E.2d 1185, 1189-90 (Mass. 1991), which in turn cited Commonwealth v. Adams, 375 N.E.2d 681, 685 (Mass. 1978)("Although most cases involving a claim of ineffective counsel concern counsel's lack of preparation, there may be instances where the judgment of fully informed counsel may be so manifestly unreasonable as to be unprotected by the labels of 'trial strategy' or 'trial tactics.'"). In White, the

---

[6] Castillo appears to suggest that the state court erroneously applied the "manifestly unreasonable" standard to *each* of the alleged errors of counsel that Castillo raised, regardless of whether these allegations related to trial counsel's strategic decision-making or to her performance. This is incorrect. The court applied the "manifestly unreasonable" standard to actions that it characterized as tactical or strategic. It applied a different test to Castillo's claims relating to trial counsel's inadequate preparation, qualifications to conduct the trial, and performance at the trial, concluding that "Attorney Fernandez's performance [was not] measurably below that of an ordinarily fallible lawyer."

-23-

Massachusetts Supreme Judicial Court quoted <u>Saferian</u>'s standard for evaluating a claim of ineffective assistance of counsel, and then added:

> In cases where tactical or strategic decisions of defendant's counsel are at issue, we conduct our review with some deference to avoid characterizing as unreasonable a defense that was merely unsuccessful. <u>See</u> <u>Commonwealth</u> v. <u>Rondeau</u>, 378 Mass. 408, 413 (1979). <u>See also</u> <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 689-90 (1984). Rather than merely unreasonable, we require that challenged tactical judgments must be "manifestly unreasonable." <u>Commonwealth</u> v. <u>Adams</u>, 374 Mass. 722, 728 (1978).

<u>White</u>, 565 N.E.2d at 1190. Thus, in support of the "manifestly unreasonable" language, the trial court cited to <u>White</u>, which relied heavily on both <u>Saferian</u> and <u>Strickland</u>. This "manifestly unreasonable" standard is not contrary to the standard set forth in <u>Strickland</u>.

In <u>Strickland</u>, the Supreme Court held that "the proper standard for attorney performance is that of reasonably effective assistance," and that "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 687. "More specific guidelines are not appropriate . . . . The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." <u>Id.</u> at 688. Recently, in <u>Williams</u> v. <u>Taylor</u>, Justice O'Connor clarified what it means for a state court decision to be contrary to clearly established federal law:

-24-

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. . . . Take, for example, our decision in <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668 (1984). If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be "diametrically different," "opposite in character or nature," and "mutually opposed" to our clearly established precedent because we held in <u>Strickland</u> that the prisoner need only demonstrate a "reasonable probability that . . . the result of the proceeding would have been different." <u>Id.</u> at 694.

<u>Williams</u> v. <u>Taylor</u>, 529 U.S. 362, 405-06 (2000). By this example, a state court decision imposing a heavier burden on a defendant endeavoring to make an ineffective assistance claim than that set forth in <u>Strickland</u> is contrary to <u>Strickland</u>.

However, <u>Strickland</u> also counsels that in evaluating the reasonableness of counsel's tactical or strategic choices, courts must apply "a heavy measure of deference to counsel's judgments." In this context, "the Supreme Court [in <u>Strickland</u>] cited with approval the approach to strategic decision-making of the Fifth Circuit Court of Appeals, which allowed challenges when 'the choice was so patently unreasonable that no competent attorney would have made it.'" <u>Phoenix</u> v. <u>Matesanz</u>, 233 F.3d 77, 82 n.2 (1st Cir. 2001)(quoting <u>Washington</u> v. <u>Strickland</u>, 693 F.2d 1243, 1254 (5th Cir. 1982)). In addition to the First and Fifth Circuits, other circuits have applied this "patently unreasonable" formulation to

-25-

tactical judgments.  See, e.g., <u>Bullock</u> v. <u>Carver</u>, 297 F.3d 1036, 1046 (10th Cir. 2002); <u>Dorsey</u> v. <u>Chapman</u>, 262 F.3d 1181, 1186 (11th Cir. 2001), <u>cert. denied</u>, 535 U.S. 1000 (2002).[7]  The minor variation in phraseology between "patently" and "manifestly" does not render the Massachusetts standard contrary to federal law.  <u>See</u> <u>Ouber</u>, 293 F.3d at 32.  As the Supreme Court in <u>Strickland</u> implicitly affirmed the lower court's "patently unreasonable" formulation in the context of tactical decision-making, the standard employed by the trial court in evaluating Castillo's ineffective assistance of counsel claim was not "diametrically different," "opposite in character or nature," or "mutually opposed" to <u>Strickland</u>.

---

[7]  In citing with approval the Fifth Circuit's approach, the Supreme Court in <u>Strickland</u> noted that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," while "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." <u>Strickland</u>, 466 U.S. at 690-91.  Thus, rather than simply characterizing trial counsel's tactical decisions as "unconsidered blunders," Castillo might have argued that the trial court erred by failing to distinguish between informed and uninformed tactical decision-making.  However, those Circuits that have adopted the "patently unreasonable" formulation are divided on the question of whether <u>Strickland</u> accords heightened deference only to informed strategic choices. <u>See</u> <u>Epsom</u> v. <u>Hall</u>, 330 F.3d 49, 54 (1st Cir. 2003)(applying the formulation to all strategic decision-making); <u>Dorsey</u>, 262 F.3d at 1186 (same); <u>cf.</u> <u>Bullock</u> v. <u>Carver</u>, 297 F.3d at 1046 (applying the standard to counsel's "fully-informed strategic choices").  Therefore, even if Castillo had raised this argument directly, we would be unable to conclude that the state court's application of the "manifestly unreasonable" formula to all tactical judgments was contrary to <u>Strickland</u>.

-26-

### 3. Unreasonable Application of Strickland

In his habeas petition to the district court, and now on appeal, Castillo argues that the trial court's resolution of the ineffective assistance of counsel claim was an unreasonable application of clearly established federal law. Castillo's complaints fall into two broad categories. Under the first, Castillo alleges that Fernandez's failure to know the law resulted in the following errors: (1) stipulating that the substance found in the apartment was cocaine and that the total amount of cocaine exceeded 200 grams; (2) rejecting jury instructions on the lesser included offenses of simple possession and possession with intent to distribute; and (3) requesting a harmful joint venture jury instruction. Under the second, Castillo alleges that Fernandez's failure to know the facts caused her to (1) call Castillo to the stand after inadequate preparation; and (2) fail to call two witnesses (Ms. Mercado and Ms. Dominguez).

The trial court viewed Castillo's performance-related allegations that counsel was ill-prepared and unqualified as "mere Monday-morning quarterbacking." Commonwealth v. Castillo, No. 9477 CR 3461, slip op. at 6. The trial court found that Fernandez's performance was not "measurably below that of an ordinarily fallible lawyer." Id. at 5. The court cited as evidence of the adequacy of her performance Fernandez's appropriate presentation of a number of pretrial motions, her effective cross-examination of

-27-

the prosecution's witnesses, and a well-argued motion for a finding of not guilty at the close of the Commonwealth's case as well as at the end of trial. The court's evaluation of counsel's performance from its contemporaneous perspective during trial is an appropriate application of Strickland's caution against the "distorting effects of hindsight." Strickland, 466 U.S. at 689.

The trial court deemed Fernandez's decision not to call Ms. Mercado and Ms. Dominguez "a strategic decision which the court will not second guess" and "well within the wide range of reasonable professional assistance." These witnesses could not offer testimony on the critical issue of what transpired within the apartment but could only corroborate Castillo's history and stated reasons for being in Massachusetts. Moreover, there were details of their proposed testimony (such as their accounts of where he got the $467 in cash) that conflicted with Castillo's testimony. The trial court's determination that the decision not to call them to the stand was reasonable was an appropriate application of Strickland's insistence on the "wide latitude counsel must have in making tactical decisions." Strickland, 466 U.S. at 689. Similarly, the court viewed Fernandez's rejection of instructions on lesser offenses offered by the judge to be consistent with counsel's not-manifestly-unreasonable theory that Castillo had no knowledge of any drugs in the apartment. This determination is consistent with the acknowledgment in Strickland that "[t]here are

countless ways to provide effective assistance in any given case," and that there is a "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland 466 U.S. at 689 (internal quotations omitted).

The most troubling of Fernandez's alleged errors is her stipulation to the quantity of drugs found in the apartment. By stipulating to 200 grams, Fernandez not only ensured that, if found guilty, Castillo would be sentenced to a minimum of fifteen years, but she also established as proven a fact from which the jury could draw the reasonable inference of intent to distribute. The trial court found this decision not to contest the quantity of drugs to be consistent with counsel's theory that Castillo did not know anything about the drugs present in the apartment, a theory of the case that the trial court concluded was not manifestly unreasonable.

We acknowledge that Fernandez's decision to stipulate to the presence of the 200 grams or more of cocaine seems, from hindsight, somewhat puzzling. She could have concurrently maintained the theory that Castillo did not know about the drugs while requiring the Commonwealth to meet its burden of proof as to the quantity of cocaine found in the apartment. She received no apparent advantage from this concession. On the other hand, with 169 grams of cocaine found in the clear plastic bags thrown out the window, and several additional bags of cocaine in the brown paper

bag on the table where Castillo was standing (along with the cocaine the jury might have assumed was flushed down the toilet), proof of the 200 gram minimum, in the absence of the stipulation, would probably not have taxed the prosecution greatly. Defense counsel might well have reasoned that a refusal to stipulate would only draw attention to the various quantities of drugs in the immediate area and thereby hurt, not help, her client.

In any event, given the consistency of this stipulation with Castillo's defense (an unawareness of the presence of drugs in the apartment), we can not say that the trial court's determination that this defense strategy "was not manifestly unreasonable" (and therefore did not constitute ineffective assistance of counsel) rises to the level of "unreasonableness" required by the AEDPA statute. Indeed, in light of Strickland's

implicit endorsement of the Fifth Circuit's "patently unreasonable" approach to the analysis of decision-making and its presumption that the challenged action "might be considered sound trial strategy," Strickland, 466 U.S. at 689, the conclusion is inescapable that the trial court's rejection of Castillo's ineffective assistance claim does not constitute an unreasonable application of clearly established federal law.

**Affirmed**.