# United States Court of Appeals
## For the First Circuit

No. 18-2028

YARA CHUM,

Petitioner, Appellant,

v.

PATRICIA ANNE COYNE-FAGUE,
Acting Director of the Adult Correctional Institutions,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Lynch, Lipez, and Thompson,
Circuit Judges.

Camille A. McKenna, Assistant Public Defender, Appellate
Division, Rhode Island Public Defender, for petitioner.
Lauren S. Zurier, Assistant Attorney General, Office of the
Attorney General, for respondent.

January 27, 2020

**LIPEZ**, **Circuit Judge**.  Petitioner Yara Chum, who was convicted in Rhode Island state court on felony assault and firearms charges, claims that he was denied his Sixth Amendment right to the effective assistance of counsel when his attorney did not move for a mistrial after the State failed to introduce evidence of Chum's confession described in the prosecutor's opening statement.  Chum now seeks a writ of habeas corpus on the ground that the Rhode Island Supreme Court's evaluation of his constitutional claim was contrary to, or involved an unreasonable application of, federal law.  Specifically, Chum contends that the state court applied an "incurable prejudice" standard, rather than the prejudice standard established in Strickland v. Washington, 466 U.S. 668 (1984).  Incurable prejudice is the standard used in Rhode Island to assess whether a prosecutor's improper statements made to a jury prejudiced the defendant in a way that cannot be corrected through instructions by the judge, such that a mistrial is required.  See State v. Perry, 779 A.2d 622, 628 (R.I. 2001).

Because we conclude that the Rhode Island Supreme Court's use of the incurable prejudice standard in the course of assessing Chum's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, federal law, we affirm the district court decision denying the petition for habeas corpus relief.

- 2 -

## A. Factual Background

Chum was convicted on assault and firearms charges stemming from his participation in a shooting in Providence, Rhode Island, in March 2009, after "a drug deal [went] awry." State v. Chum, 54 A.3d 455, 457 (R.I. 2012). Chum was not involved in the drug transaction, but he and his associate Samnang Tep confronted three men who lived with the drug dealer about their involvement in a conflict that followed the disputed marijuana sale. As a result of the dispute, someone had shattered the windows at the residence of Chum's friend, and Chum asked the three men, while they stood on their front porch, whether they were to blame. After a verbal exchange, the conflict escalated. Chum ordered Tep to shoot the men on the porch. Tep fired a single shot in the direction of the porch, hitting the porch railing. No one was hit.

Chum was arrested shortly thereafter. Later that evening, after indicating that he understood his Miranda rights, he made an oral statement admitting he was involved in the

shooting.[1]  At trial, the prosecutor referenced Chum's admission

in his opening statement[2]:

> I told you we'd prove this case with witnesses; we'd
> also prove it with the defendant's words himself,
> because, when the detectives came to the Cranston Police
> Department, they read him his rights and sat down and
> talked to him.  And the defendant told him that he was
> contacted by Erin [Murray] and told that she needed him
> to take care of something; that she wanted them to take
> care of some kid named Frankie for smashing her windows;
> that he drove down to Peach Avenue with Matthew
> DePetrillo and Erin [Murray] so that they could point
> out the house; that he approached the house with a
> friend, Vang Chhit; that he approached some guys on the
> porch; that he ordered Chhit to shoot the guys; that
> Erin [Murray], Matthew DePetrillo and Samnang Tep were
> in a different car waiting around the corner; and that
> he and Chhit fled in separate cars, one red, and one
> white.  You'll hear that.  You'll hear about the
> defendant giving that statement to the Providence
> Police.

Chum v. State, 160 A.3d 295, 297 (R.I. 2017).[3]  Despite these

comments, the State never introduced Chum's statement into

evidence.  However, the trial justice admonished the jury four

---

[1] Chum's motion to suppress his statement was denied after an evidentiary hearing.  The Rhode Island Supreme Court affirmed that decision in Chum's direct appeal.  Chum, 54 A.3d at 461-62.

[2] The prosecutor's opening statement references numerous individuals by name.  Because the roles of these individuals within the conflict are not material to our analysis, we do not provide background about them.

[3] The evidence at trial showed that Tep, rather than Chhit, was the shooter, despite the prosecutor's comment that Chum had identified Chhit as the shooter in his statement to the police. Chum, 160 A.3d at 297 n.3.

- 4 -

times during the trial that the statements of lawyers are not evidence.[4]

## B. Procedural History

At the close of trial, the court entered a judgment of acquittal on a count charging conspiracy to commit assault with a dangerous weapon and the State dismissed a charge of carrying a firearm while committing a crime of violence. However, the jury convicted Chum on the three remaining counts: two counts of assault with a dangerous weapon and one count of discharging a firearm while committing a crime of violence. After denying Chum's motion for a new trial, the trial justice sentenced Chum to ten years' imprisonment on each felony assault count, to be served concurrently, and a consecutive ten-year sentence on the firearms count, with five years to serve and five years suspended, with probation.

---

[4] Although Chum's trial counsel did not request them, the trial justice gave the following standard instructions to the jury: (1) "I tell you now, and I probably will remind you before this case is over, the statements of lawyers are not evidence"; (2) "I told you before we started, ladies and gentlemen, that the statements of lawyers are not evidence"; (3) "I told the jury earlier, when we started this trial, that statements [of] lawyers are not evidence"; and (4) "Counsel will now address you, and I, again, remind you of what I said before, and that is that their statements and their arguments are not evidence. If the lawyer says something that doesn't correlate with your memory, it's your memories that count, not the memories of counsel." Chum, 160 A.3d at 298 n.5.

After his conviction was affirmed by the Rhode Island Supreme Court, Chum applied for postconviction relief based on the ineffective assistance of counsel, asserting that his lawyer violated his Sixth Amendment right by failing to move for a mistrial or request a curative instruction after the State described Chum's alleged confession in its opening statement but did not introduce evidence of the confession. The Rhode Island Superior Court denied the application, in a decision written by the trial justice who had presided over Chum's trial. In that decision, the trial justice stated that he would not have granted a mistrial if Chum's counsel had moved for one. Chum v. State, No. PM131919, 2014 WL 6855341, at *3 (R.I. Super. Ct. Dec. 1, 2014). The trial justice also noted the "overwhelming" evidence of Chum's guilt and the fact that the court had reminded the jury four separate times that statements of counsel were not evidence. Id. In 2017, the Rhode Island Supreme Court affirmed. Chum, 160 A.3d at 296.

Chum filed a petition for a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254, again claiming ineffective assistance of counsel in violation of the Sixth Amendment. Chum argued that, because of the unique power of confession evidence, his lawyer's failure to move for a mistrial was highly prejudicial, rising to the level of constitutionally deficient assistance of counsel. The district court denied the

petition on the merits in October 2018, holding that the Rhode Island Supreme Court's decision was neither contrary to nor an unreasonable application of the federal standard governing ineffective assistance of counsel claims. Chum v. Wall, No. 17-541-JJM-LDA, 2018 WL 4696739, at *1 (D.R.I. Oct. 1, 2018). Although the district court concluded that Chum's lawyer's performance was constitutionally deficient, it determined that the Rhode Island Supreme Court's conclusion that Chum had not satisfied the prejudice prong, given the weight of the evidence and the trial justice's cautionary instructions, was not an unreasonable application of clearly established federal law. Id. at *4-5. However, the district court issued a certificate of appealability and Chum timely filed this appeal.

## II.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), if the state court has adjudicated an appellant's claims on the merits, a federal court may grant habeas relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

- 7 -

the State court proceeding," id. § 2254(d)(2). Chum asserts a claim under the first section only.

An adjudication is contrary to clearly established law if the state court "'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" Gomes v. Brady, 564 F.3d 532, 537 (1st Cir. 2009) (alterations in original) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). An adjudication involves an unreasonable application "if the state court identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case." Abrante v. St. Amand, 595 F.3d 11, 15 (1st Cir. 2010) (internal quotation marks omitted).

When, as here, the district court does not engage in independent factfinding in a federal habeas case, "we are effectively in the same position as the district court vis-à-vis the state court record." Pike v. Guarino, 492 F.3d 61, 68 (1st Cir. 2007).

## III.

### A. Ineffective Assistance of Counsel Standard

To succeed with a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must establish both that his

- 8 -

"counsel's representation fell below an objective standard of reasonableness," known as the performance prong, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," known as the prejudice prong. Strickland, 466 U.S. at 688, 694. Only the prejudice prong is at issue here.[5]

To successfully prove prejudice, a petitioner may not simply show that counsel's errors had "some conceivable effect on the outcome," but, on the other hand, he also "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Id. at 693. Rather, a petitioner must show that, but for counsel's deficient performance, there is a "reasonable probability" of a different outcome, meaning "a probability sufficient to undermine confidence in the outcome." Id. at 694.

## B. Rhode Island's "Incurable Prejudice" Standard

Under Rhode Island law, trial courts use an "incurable prejudice" standard to assess whether improper comments made by a prosecutor create reversible error. Perry, 779 A.2d at 628. Under this standard, "reversible error occurs if the allegedly improper

---

[5] Rhode Island has conceded, for purposes of this appeal, that Chum has established his attorney's deficient performance. Therefore, we will not address that prong of the Strickland analysis.

comment was so flagrantly impermissible that even a precautionary instruction would have been insufficient to dispel the prejudice in the jurors' minds and to assure [a] defendant a fair and impartial trial."  State v. Collazo, 446 A.2d 1006, 1010 (R.I. 1982).

While incurable prejudice "inheres" in prosecutorial comments that "'are totally extraneous to the issues in the case and tend to inflame and arouse the passions of the jury' against the defendant," comments that do not create such flagrant bias must be assessed with the other circumstances of the case in mind. Ware, 524 A.2d at 1112 (quoting State v. Mancini, 274 A.2d 742, 748 (R.I. 1971)).  "Determination of whether a challenged remark is harmful or prejudicial cannot be decided by any fixed rule of law."  Collazo, 446 A.2d at 1010.  Rather, in assessing whether a challenged remark has created incurable prejudice, a trial justice "must evaluate [the comment's] probable effect on the outcome of the case by examining the remark in its factual context."  Id. Thus, the weight of the evidence is relevant, as are any curative instructions, in deciding whether a prosecutor's remarks have created incurable prejudice, requiring either a mistrial to be granted or, on appeal, a conviction to be vacated.[6]  See, e.g.,

_____

[6] In addition to the weight of the evidence and curative instructions, the fact that defense counsel did not move for a mistrial or request curative instructions in response to a prosecutor's improper statements can also be evidence under Rhode

<u>Perry</u>, 779 A.2d at 627-28 (finding no incurable prejudice and upholding conviction given overwhelming evidence of guilt and curative instructions given by the trial justice, even though prosecutor stated in opening that a confidential informant would testify about defendant's alleged admissions, but the informant did not do so); <u>Ware</u>, 524 A.2d at 1113 (holding that prosecutor's statements did not create incurable prejudice in light of the curative instructions and "ample independent evidence" of defendant's guilt). Under Rhode Island law, a motion for a mistrial is left to the discretion of the trial justice and "will not be disturbed on appeal unless clearly wrong." <u>Ware</u>, 524 A.2d at 1112.

## IV.

In denying Chum's petition for postconviction relief based on ineffective assistance of counsel, the Rhode Island Supreme Court articulated the correct standard for ineffective

Island law that the statements did not cause incurable prejudice. <u>See</u>, <u>e.g.</u>, <u>Perry</u>, 779 A.2d at 628. In the context of a direct appeal, the Rhode Island Supreme Court sometimes looks to the defense counsel's own course of action after improper prosecutorial comments to assess how prejudicial the comments were: if the statements were highly prejudicial, defense counsel would have responded, either by moving for a mistrial or seeking another remedy. However, in this post-conviction challenge, the Rhode Island Supreme Court rightly did not rely on the defense counsel's response in concluding that there was no incurable prejudice. Here, defense counsel's failure to respond to the prosecutor's comments is precisely what is at issue in this appeal.

- 11 -

assistance, laid out in Strickland. It then framed the issue presented in terms of Rhode Island's state law "incurable prejudice" standard: the case required it to decide "whether a prosecutor's reference to an admission in an opening statement and subsequent failure to introduce it into evidence amounts to incurable prejudice." Chum, 160 A.3d at 299-300.

Chum argues that the state court's use of the incurable prejudice standard was contrary to the Strickland prejudice standard, and the state court's conclusion that there was no prejudice was an unreasonable application of the Strickland standard because there is a reasonable probability that, if the trial attorney had moved for a mistrial, it would have been granted.[7] We consider each of these two contentions in turn.

## A. "Contrary To" Strickland

### 1. Waiver

Although Chum asserted generally in his habeas petition in the district court that the Rhode Island Supreme Court's decision was either "contrary to, or an unreasonable application

---

[7] Chum argues that, when failure to move for a mistrial is the basis for an ineffective assistance of counsel claim, showing a reasonable probability that a mistrial would have been granted satisfies the Strickland prejudice standard. We agree and, therefore, need not address his alternative argument that, to the extent that a petitioner must also show a reasonable probability of prevailing at a new trial, he would satisfy even this higher burden.

- 12 -

of," federal law, he did not develop any argument regarding the "contrary to" prong, including any argument about the Rhode Island Supreme Court's application of the incurable prejudice standard. Rather, his argument focused on the Rhode Island Supreme Court's use of the Strickland prejudice standard without reference to its use of the State's incurable prejudice standard. Accordingly, the government now argues that Chum has waived the primary argument he makes on appeal: that the Rhode Island Supreme Court's use of the incurable prejudice standard is contrary to clearly established federal law.

To rebut this waiver argument, Chum points to the district court's conclusion that the Rhode Island Supreme Court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law. But Chum's general reference to both prongs of § 2254, and the district court's conclusion that neither had been satisfied, is no substitute for the development of a "contrary to" argument, in general, or his argument regarding incurable prejudice, in particular, in the district court. Chum is certainly vulnerable to a waiver argument.

We confronted this identical issue in Castillo v. Matesanz, 348 F.3d 1 (1st Cir. 2003). In that case, we held that, when a petitioner seeking postconviction relief pursues an argument on appeal that he failed to develop in his habeas petition in the district court, an appellate court may nonetheless address

the merits of the inadequately preserved argument in exceptional cases. See id. at 12. Among the relevant factors to consider are whether the argument concerns constitutional rights of both the appellant and future defendants, raises an important question of law, can be resolved on the existing record, was fully briefed by the parties, and is likely to be repeated in future cases. See id.

Chum's argument concerning the "incurable prejudice" standard is a pure question of law, which may be resolved without additional factfinding and based on the briefs filed by the parties. Rhode Island is likely to continue applying this state standard in the context of ineffective assistance of counsel claims, and whether the use of the "incurable prejudice" standard resulted in a decision contrary to Strickland implicates important constitutional rights of Chum and, potentially, other petitioners in Rhode Island. We therefore consider the merits of Chum's claim.

**2. The Rhode Island Supreme Court's Reliance on the Incurable Prejudice Standard**[8]

**a. The Rhode Island Supreme Court's Decision**

After articulating the ineffective assistance standard laid out in Strickland and the incurable prejudice standard for

---

[8] We reject the State's attempt to dispose of Chum's claim by asserting that the state high court referenced the Rhode Island incurable prejudice standard in assessing only the performance prong -- which is not at issue in this appeal -- of Chum's ineffective assistance claim, not as part of the prejudice

- 14 -

assessing the prejudice stemming from a prosecutor's improper opening statements, the Rhode Island Supreme Court reviewed the steps Chum's lawyer could have taken when the government failed to introduce evidence of Chum's confession as promised. Chum's trial counsel could have (1) commented on the government's unfulfilled promise in his closing argument; (2) moved for a mistrial; or (3) requested a curative instruction. Chum, 160 A.3d at 299.

The Rhode Island Supreme Court explained why there was no prejudice stemming from Chum's counsel's failure to pursue any of these options. First, the court concluded that the evidence, including testimony from three eyewitnesses to the shooting, was "overwhelming." Id. at 300. Second, the trial justice sua sponte instructed the jury four times over the course of the trial that statements of counsel are not evidence. Id. Finally, the court concluded that "the trial attorney's failure to move for a mistrial was not prejudicial because the trial justice, in denying Chum's application for postconviction relief, stated that he would not have granted a mistrial even if the attorney had so moved." Id.

---

analysis. Under the State's theory, Chum's "contrary to" argument fails because the state court never used the incurable prejudice standard to assess the prejudice prong and, therefore, could not have impermissibly replaced the appropriate Strickland prejudice standard with the state standard. This reading of the Rhode Island Supreme Court's decision is untenable.

- 15 -

### b. The Propriety of the State High Court's Analysis

Chum's argument in this court focuses exclusively on the Rhode Island Supreme Court's analysis of the prejudice stemming from his lawyer's failure to move for a mistrial. Chum contends that the court improperly assessed that deficiency by replacing the reasonable probability test from Strickland with the state law incurable prejudice standard. According to Chum, evaluating the prejudice issue under the wrong standard resulted in a decision contrary to federal law. We disagree. The Rhode Island Supreme Court did not replace or otherwise equate Strickland with its own standard, nor do we believe it would have been proper to do so. Rather, fairly read, the Rhode Island Supreme Court's opinion asked, in accordance with Strickland, whether there was a reasonable probability that the trial justice would have granted a mistrial motion. In this case, the answer to that question depended on the state law incurable prejudice standard.

Under Rhode Island law, as explained above, the incurable prejudice standard governs whether a court should grant a mistrial based on improper prosecutorial comments. When assessing whether a mistrial is warranted in such circumstances, a court must ask whether the comments have caused prejudice that is "inexpiable and incurable by timely instructions." Ware, 524 A.2d at 1112. Thus, if Chum's lawyer had moved for a mistrial,

- 16 -

the trial justice would have asked whether the comments that formed the basis for the request had caused incurable prejudice.

The Rhode Island Supreme Court's assessment of Strickland prejudice based on a failure to move for a mistrial, therefore, required it to apply the Rhode Island incurable prejudice standard. To determine whether there was a reasonable probability that Chum's trial would have resulted in a different outcome -- a mistrial -- the Rhode Island Supreme Court had to assess the likelihood that a mistrial would have been granted under its own state law. Although the state high court did not explicitly link the two standards in this way, its analysis reveals reliance on that logic. Put differently, to evaluate the likelihood of a different outcome if counsel had performed as Chum insists he should have, the Rhode Island Supreme Court needed to consider -- under Rhode Island law -- what would have happened if counsel had sought a mistrial. To do that, the court needed to apply Rhode Island's incurable prejudice standard to the circumstances of Chum's trial. And that standard required the court to consider not only the prosecutorial error but also the weight of the evidence and curative instructions.[9]

---

[9] To be clear, Chum has not argued that Rhode Island's "incurable prejudice" standard is too high to appropriately gauge whether the prosecutor's improper opening remarks violated his right to a fair trial under the Due Process Clause. See, e.g., Obershaw v. Lanman, 453 F.3d 56, 65 (1st Cir. 2006) (explaining that a prosecutor's statement may "so infect[ ] the trial with

- 17 -

Thus, in assessing whether defense counsel's failure to move for a mistrial prejudiced Chum for purposes of his postconviction ineffective assistance claim, the Rhode Island Supreme Court appropriately considered what it concluded was "overwhelming evidence" of Chum's guilt, as well as the curative instructions the trial justice had given four times over the course of the trial. The state high court held that, in light of these circumstances, the prosecutor's comments had not created incurable prejudice, and thus a mistrial would not have been granted under state law.[10] The Rhode Island Supreme Court did not conclude its

---

unfairness as to make the resulting conviction a denial of due process"). Because Chum has raised only an ineffective assistance of counsel claim, rather than a Due Process claim, we do not address the latter.

[10] In his decision denying Chum's petition for postconviction relief based on ineffective assistance of counsel, the trial justice of the Superior Court, who also presided over Chum's trial, stated that he would not have granted a motion for a mistrial if Chum's lawyer had so moved. The Rhode Island Supreme Court cited this as one reason for concluding that Chum had not shown that his lawyer's failure to move for a mistrial had prejudiced him for Strickland purposes. Strickland makes clear that a reviewing court should not assess the prejudice stemming from trial counsel's deficient performance based on the particular trial judge assigned to the case. Rather, "[t]he assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision . . . not . . . on the idiosyncrasies of the particular decisionmaker" who presided at the trial level. Strickland, 466 U.S. at 695. Thus, the Rhode Island Supreme Court had an obligation to assess whether the relevant state law standard -- here, the incurable prejudice standard governing motions for mistrials -- had been satisfied and whether such a motion was likely to be granted. It could not simply defer to the trial justice's retrospective comment about how he would have handled a

analysis by stating explicitly that there is no reasonable probability that, if trial counsel had moved for a mistrial, the outcome of the proceeding would have been different.  But it is clear from the court's recitation of the Strickland standard, coupled with its incurable prejudice analysis, that it concluded that there was no reasonable probability that such a motion would have been granted and, thus, the failure to so move could not result in Strickland prejudice.  We, therefore, hold that the Rhode Island Supreme Court's use of the incurable prejudice standard did not lead to a decision "contrary to" federal law.

## B. "Unreasonable Application" of Strickland

Chum also argues that the Rhode Island Supreme Court's application of Strickland was unreasonable because there is a reasonable probability that the trial justice would have granted a mistrial if Chum's counsel had moved for one, given the unique power of confession evidence and the otherwise underwhelming evidence against him. We disagree.  The Rhode Island Supreme Court held that, in light of the overwhelming evidence against Chum,

---

motion for a mistrial, if Chum's counsel had so moved. Given the multi-factor analysis employed by the Rhode Island Supreme Court in assessing the incurable prejudice issue, it is clear that the Rhode Island Supreme Court did not simply defer to the trial justice's after-the-fact comment.  In other words, it is apparent from the rest of the Rhode Island Supreme Court's analysis that it concluded, from its independent application of the incurable prejudice standard, that a mistrial was not warranted under Rhode Island law.

- 19 -

including three eyewitnesses to the shooting, and the curative instructions given, a mistrial would not have been granted based on Rhode Island's standard for assessing such a motion. Chum disagrees with the court's assessment of the weight of the evidence, but he has not shown why the state high court's analysis was unreasonable.

## V.

For the reasons set forth above, we conclude that the Rhode Island Supreme Court's use of the state law incurable prejudice standard did not result in a decision that is contrary to, or an unreasonable application of, the federal standard for assessing prejudice established in <u>Strickland</u>. Accordingly, we affirm the district court's denial of Chum's petition for a writ of habeas corpus.

<u>So ordered</u>.